**In re Julane GOINS and Foley Goins, Plaintiffs,**

v.

**DIAMOND MORTGAGE CORPORATION, Defendant.**

**Bankruptcy Nos. 89 B 15704, 89 A 0962.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 9, 1990.

Robert J. Adams, Robert J. Adams & Associates, P.C., Chicago, Ill., for plaintiffs.

David J. Letvin, Letvin & Stein, Chicago, Ill., for defendant.

Jack McCullough, Chicago, Ill., trustee.

## MEMORANDUM, OPINION, AND ORDER

### FACTS

ROBERT E. GINSBERG, Bankruptcy Judge.

Julane and Foley Goins are the owners of a single family home. The home is their principal residence. Diamond Mortgage Corporation holds the mortgage on the home. At present, the Goins owe Diamond about $47,000 on the home. Diamond has no security for its loan to the Goins other than the Goins' home.

The Goins fell behind on their mortgage payments to Diamond, and in June, 1988 Diamond began foreclosure proceedings against the home. On June 8, 1989, Diamond got a judgment of foreclosure against the Goins in the amount of $47,007.30. A judicial sale of the home was set

for September 20, 1989. In order to prevent their home from being foreclosed upon, the Goins filed a Chapter 13 petition on September 19, 1989.

The Goins have filed a complaint seeking to scale down the mortgage debt they owe Diamond under §§ 506(a) [1] and 506(d) [2] of the Bankruptcy Code and under Bankruptcy Rule 3007.[3] The gist of the Goins' complaint is that while they owe Diamond some $47,000 (or more), their home is only worth $43,000. The Goins want this court to determine that under 11 U.S.C. §§ 506(a) and 506(d), $43,000 of Diamond's claim is secured, and that the balance of Diamond's claim is unsecured. In their Chapter 13 plan, the Goins propose to pay off the Diamond's $43,000 secured claim in full over 60 months with interest at 15.5% to insure that Diamond receive the current value of its secured claim as required by 11 U.S.C. § 1325(a)(5). The Goins propose to pay off Diamond's unsecured claim at ten cents on the dollar over the same sixty month period.

Diamond has filed a motion to dismiss the Goins' complaint under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b) for failure to state a claim on which relief can be granted. Diamond argues that § 1322(b)(2) of the Bankruptcy Code prohibits Chapter 13 debtors like the Goins from dividing claims of home mortgagees like Diamond, whose only collateral is the debtors' principal residence, into secured and unsecured portions.[4] As Diamond sees it, such claims must always be treated as if fully secured. If this analysis is correct, the debtor's options vis-a-vis Diamond are to either pay the present value of its entire claim (both secured and unsecured portions) over the life of the plan or alternatively to cure and reinstate the mortgage in full and make all payments in accordance with the mortgage agreement. 11 U.S.C. §§ 1322(b)(5), 1325(a)(5).[5]

1.  Section 506(a) of the Bankruptcy Code provides:
    An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
    11 U.S.C. § 506(a).

2.  Section 506(d) of the Bankruptcy Code provides:
    To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such a lien is void, unless
    (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title: or
    (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
    11 U.S.C. § 506(d).

3.  Bankruptcy Rule 3007 provides:
    An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

4.  Section 1322(b)(2) provides that "the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2).

5.  There is some dispute over whether a Chapter 13 plan can alter the terms of the bargain struck by the parties (i.e., the contract, the note, the mortgage, etc.) by providing for repayment on terms different than those agreed upon, in particular whether a debtor could pay off a home mortgage in full with interest over the life of a three to five year Chapter 13 plan regardless of whether the remaining term of the mortgage is less than or more than the term of the plan. The dispute centers on whether such an alteration constitutes an impermissible "cure" under § 1322(b)(2). *Compare Grubbs v. Houston First American Savings Bank Assoc.*, 730 F.2d 236 (5th Cir.1984); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989) *with In re Seidel*, 752 F.2d 1382 (9th Cir.1985); *In re Palazzolo*, 55 B.R. 17 (Bankr.E.D.N.Y.1985). However, this issue is not before the court in the instant motion and therefore need not be decided today.

The motion to dismiss has been fully briefed by Diamond and the Goins and is now before this court for decision. As with any motion to dismiss, this court assumes for purposes of this motion that all well pleaded facts in the plaintiffs' complaint are true, with all inferences drawn in favor of the plaintiff. *Redfield v. Continental Casualty Corp.*, 818 F.2d 596 (7th Cir.1987); *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261 (7th Cir.1984), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). Therefore, for purposes of Diamond's motion to dismiss, the court will assume as true the facts asserted in the Goins' complaint specifically, that the value of their residence is less than the amount of Diamond's claim. For reasons explained in the balance of this opinion, Diamond's motion to dismiss is denied.

## JURISDICTION

This adversary proceeding arises under §§ 506 and 1322 of the Bankruptcy Code. Accordingly, this court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(k) and is before this court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring all bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

### A. The Statute

The issue to be resolved is easy to state. Can a Chapter 13 debtor modify the unsecured portion of an undersecured creditor's claim when that claim is secured solely by the debtor's principal residence? The answer to this question turns on whether § 1322(b)(2) prohibits the modification of certain claims that are not secured claims as defined by § 506(a).

The analysis begins with the language of § 1322(b)(2) because "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1939, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). Section

1322(b)(2) provides that "the plan may ... modify the rights of *holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2) (1986) (emphasis added).

Unfortunately, when read in conjunction with § 506(a), the precise meaning of § 1322(b)(2) is comparable to the clarity of the Chicago River on St. Patrick's Day (when, by local custom, the river is dyed green). In fact, § 1322(b)(2) seems to have been drafted in an exercise of studied ambiguity. Therefore, it is not surprising that two irreconcilable interpretations of § 1322(b)(2)'s effect on undersecured home mortgagees have emerged in the caselaw.

One line of cases concludes that the clause "other than a claim secured only by a security interest in real property that is the debtor's principal residence" must be read to protect all claims of a creditor whose only collateral is the debtor's principal residence, regardless of whether the creditor's claim is oversecured or undersecured. According to this line of cases, § 1322(b)(2)'s anti-modification language prohibits a debtor's Chapter 13 plan from modifying even the unsecured portion of an undersecured creditor's claim where that creditor's only collateral is the debtor's home. This line of cases reads the phrase "claim secured only by a security interest in real property that is the debtor's principal residence" to encompass the entire claim of the undersecured home mortgage lender including both the secured and unsecured portions of the claim of that creditor. *See e.g., In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Roberts*, 99 B.R. 653 (Bankr. W.D.Pa.1989); *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont.1987); *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986).

The other line of cases focuses on the § 506(a) definition of allowed secured claim in interpreting the words "claim secured only" contained in § 1322(b)(2). Under this approach, § 1322(b)(2) does not provide

anti-modification protection to underse-cured creditors whose only collateral is the debtor's home. Instead, under this inter-pretation, all that is protected by § 1322(b)(2) is the home mortgagee's al-lowed *secured* claim. If the home mort-gage is fully secured (i.e. the value of the home equals or exceeds the amount the mortgagee is owed), the mortgagee's entire claim is protected by § 1322(b)(2). The only options available to the debtor in those circumstances are to either pay off the mortgage debt in full with interest in five years or less or to cure any default under the mortgage in a reasonable time, and to thereafter live up to all of the terms of the mortgage. *See generally* 5 Collier on Bankruptcy ¶ 1322.06[1][a] (15th ed.1989).

However, if the mortgagee's claim is un-dersecured, the debtor is given a third op-tion—pay the secured portion of the claim in full with interest in sixty months and pay the unsecured portion of the claim only to the extent necessary to satisfy the re-quirements of § 1325(a)(4) (i.e., that unse-cured creditors be given payments in a Chapter 13 plan with a present value at least equal to what they would receive in a Chapter 7 liquidation). *See, e.g., In re Hougland,* 886 F.2d 1182 (9th Cir.1989); *In re Harris,* 94 B.R. 832 (D.N.J.1989); *In re Ross,* 107 B.R. 759 (Bankr.W.D.Okl.1989); *In re Frost,* 96 B.R. 804 (Bankr.S.D.Ohio 1989); *In re Caster,* 77 B.R. 8 (Bankr.E.D. Pa.1987); *In re Bruce,* 40 B.R. 884 (Bankr. W.D.Va.1984); *see also* 5 Collier on Bank-ruptcy ¶ 1322.06[1][a] (15th ed.1989). This is precisely what the Goins propose to do.

Thus, the question becomes whether a Chapter 13 debtor can use § 506(d) to bi-furcate the claim of an undersecured home mortgagee into secured and undersecured claims and thereafter get a Chapter 13 plan confirmed that pays the secured claim in full but fails to pay the unsecured claim in full. Clearly, a Chapter 13 debtor can use § 506(d) to bifurcate the claim of an un-dersecured creditor asserting a lien on per-sonalty.[6] Similarly, a Chapter 13 debtor can use § 506(d) to bifurcate the claim of an undersecured creditor whose claim in-cludes the debtor's principal residence and other collateral as well. *See Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123 (3rd Cir.1990); *In re Kessler,* 99 B.R. 635 (Bankr.E.D.Pa.1989). The narrow fo-cus here is whether the debtors can bifur-cate Diamond's claim, i.e. the claim of an undersecured creditor whose only collateral in the debtors' home.[7] Since no answer to the question posed readily appears from the language of the statute itself, it be-comes necessary to turn to the legislative history of § 1322(b)(2) to see if the legisla-tive's intent in enacting § 1322(b)(2) can be determined. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984) ("[W]e look first to the statutory language and then to the legisla-tive history if the statutory language is unclear."); *Mobil Sales & Supply Corp. v. Panamax Venus,* 804 F.2d 541, 542 (9th Cir.1986).

### B. Legislative History

The Bankruptcy Code of 1978 was enact-ed by the 95th Congress after a decade of study of bankruptcy reform. The final leg-islation was based primarily upon the pro-posal of the Commission on the Bankruptcy Laws of the United States. *See Klee, Leg-islative History of the New Bankruptcy Law,* 28 DePaul L.Rev. 941, 942–43 (1979). In 1973 the Commission issued its report

---

6. There is some dispute over whether the debt-or, as opposed to the trustee, can use § 506(d) to strip down a claim. The Seventh Circuit has allowed debtors to use § 506(d). *See, e.g., Mat-ter of Lindsey,* 823 F.2d 189 (7th Cir.1987); *con-tra In re Maitland,* 61 B.R. 130 (Bankr.E.D.Va. 1986); *In re Mahaner,* 34 B.R. 308 (Bankr.W.D. N.Y.1983); *In re Cordes,* 37 B.R. 582 (Bankr.C.D. Cal.1984).

7. Some courts have taken the technical ap-proach that § 1322(b)(2) only prohibits modifi-cation of Diamond's claim by the debtors' plan.

The argument follows that the debtors here pro-pose to bifurcate Diamond's claim not in their plan but in a separate adversary proceeding, something not prohibited by § 1322(b)(2). They will then deal with the previously bifurcat-ed claims of Diamond in their plan. *See In re Jablonski,* 70 B.R. 381, 385–86 (Bankr.E.D.Pa. 1987) *aff'd,* 88 B.R. 652 (E.D.Pa.1988). This approach, while neatly obviating any need to deal with the difficult language of § 1322(b)(2), does seem to raise form over substance.

which contained detailed analyses of consumer and business bankruptcy and proposed dramatic reforms of bankruptcy law. As part of the report, the Commission proposed comprehensive bankruptcy legislation. Section 6–201 of the proposed legislation included the following provision which is the genesis of § 1322(b)(2):

> [A chapter 13 plan] ... may include provisions dealing with claims secured by personal property severally, on any terms, and may provide for the curing of defaults within a reasonable time and otherwise alter or modify the rights of holders of such claims.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93 Cong., 1st Sess., Part II, 204 (1973).

Even though the Commission's proposal did not specifically allow the debtor to *modify* claims secured by real property, it did provide a debtor under chapter 13 with a limited right to *cure* prepetition defaults on debts secured by residential real property.[8]

Each house of Congress responded to the recommendations of the Commission by proposing its own version of bankruptcy reform. The House's version of § 1322(b)(2) would have provided that "[a chapter 13 plan may] ... modify the rights of holders of secured claims or holders of unsecured claims ..." H.R. 8200, 95th Cong., 1st Sess. § 1322(b)(2) (1977). The Senate's proposed version of 1322(b)(2) contained the following language: "[a chapter 13 plan may] ... modify the rights of holders of secured claims (*other than claims wholly secured by mortgages on real property*) or of holders of unsecured

claims ...." S.2266, 95th Cong., 2nd Sess. § 1322(b)(2) (1978) (emphasis added).

The legislative history provides little explanation for the final language of § 1322(b)(2). 1978 U.S.Code Cong. & Admin.News at 6481, 6550 (Statements of Rep. Edwards and Sen. DeConcini). The one thing certain is that the final version of § 1322(b)(2) represents a compromise between the House's blanket modification language, which would have allowed the plan to modify any secured creditor's claim regardless of the nature of the collateral, and the Senate's anti-modification language, which would leave the claims of creditors "wholly" secured by real property mortgages unaffected. What is not clear is what that compromise is—or more precisely what the language produced by the compromise means. Clearly it cannot mean that any debt secured by real estate can be altered. That would mean that the House proposal survived without substantive change. Clearly it cannot mean that any fully secured real estate mortgage cannot be altered in Chapter 13. That would mean the Senate's version prevailed.

One part of the compromise was the limitation of protection in § 1322(b) to those loans secured solely by the debtors' home. A loan wholly (i.e. fully) secured by real estate other than the debtors' home or by the debtors' home and other collateral as well can be altered in Chapter 13. *See, e.g., Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir.1990). This is a result which the Senate's proposal would have prohibited.[9] By the same token, a Chapter 13 plan cannot alter the rights of a fully secured mortgagee whose only collateral is the debtors' home. *In re Hougland,*

---

**8.** The cure provision was contained in § 6–204 of the Commission's proposed legislation which provided:

> [A chapter 13 plan] ... (4) may include provisions for the curing of defaults within a reasonable time and the maintenance of payments while the case is pending on claims secured by a lien on the debtor's residence and on unsecured claims or claims secured by personal property on which the last payment is due after completion by the debtor of all payments under the plan.

Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93 Cong., 1st Sess., Part II, 204 (1973).

**9.** This assumes that "wholly secured" means fully secured. "Wholly secured" could also arguably mean secured claims which are secured only by real estate. The former reading seems more in accord with the meaning of "wholly". According to Black's Law Dictionary, wholly is defined as "Not partially. In a whole or complete manner; entirely; completely; ... to the exclusion of other things ... fully." Blacks Law Dictionary 1432 (5th ed.1979).

886 F.2d 1182, 1184 (9th Cir.1989). The House proposal would have allowed such an alteration.

Those are the broad parameters of the compromise. Unfortunately both possible interpretations of § 1322(b)(2) fit within these parameters. Prohibition of the alteration of home mortgages, be they partially or fully secured, would represent a retreat from the House position of no protection for any real estate mortgage. On the other hand, permitting the alteration in Chapter 13 of mortgages wholly secured by real estate other than the debtors' home and protecting only those mortgages fully secured by the debtors' home alone would be a significant weakening of the protection the Senate version would have offered mortgage lenders. Thus, the legislative history offers no clear answer to the question now before this court.

However, a return to the language of § 1322(b)(2) in light of the legislative history does persuade the court that the debtors' interpretation of the Bankruptcy Code is correct.

### C. Statutory Construction

In the words of the Supreme Court, "[s]tatutory construction ... is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning seem clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savings Association v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citations omitted). The *Timbers* directive in the context of the present proceeding necessitates an analysis of the interplay between § 1322(b)(2) and § 506(a).

What does § 1322(b)(2) deal with? It deals with the ability of the debtor to alter "the rights of holders of *secured claims*, other than a claim secured only by a securi-

ty interest in real property that is the debtor's principal residence." (emphasis added). Does Diamond hold a secured claim? Under § 506(a), Diamond has a lien on property of the estate. Thus, its claim is a secured claim under that provision to the extent, but only to the extent, of the value of its collateral. Diamond's only collateral is the debtors' home. For purposes of this motion, the value of the debtors' home is assumed to be $43,000. The amount of Diamond's total claim against the debtors is roughly $47,000. However, under § 506(a), "a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *U.S. v. Ron Pair Enter, Inc.*, 489 U.S. 235, 238, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290, 297 (1989). Thus, under § 506(a), Diamond has a secured claim of $43,000 and a completely separate unsecured claim of $4,000.[10]

There is nothing in either § 506 or § 1322(b)(2) that suggests that the terms "secured claim" and "unsecured claim" are to be given any different meaning in § 1322(b)(2) than in any other provision of the Bankruptcy Code. The statute should be read if possible to give independent significance to both § 506(a) and § 1322(b)(2). It is a consistent reading of the two provisions to read § 506(a) as defining the terms "secured claim" and "unsecured claim" and § 1322(b)(2) as spelling out the rights of the holder of secured claims and the holders of unsecured claims in the Chapter 13 plan context. *See also* 11 U.S.C. §§ 1325(a)(4) and (5).

Under this analysis, Diamond, as a holder of a secured claim, cannot have its $43,000 secured claim altered because Diamond's only collateral is the debtors' home. However, as the holder of an unsecured claim, Diamond's rights with respect to its $4,000 unsecured claim is subject to modification by the debtors' plan. Had Diamond's claim been fully secured, the debtors' only remedy would have been a § 1322(b)(5) cure or a pay off in full over

---

**10.** Interestingly enough, under the definition of "secured claim" in § 506(a), all secured claims are "wholly" secured in one sense.

the life of the plan with interest. *See* 124 Cong.Rec. 11106–11107 ("It is intended that a claim secured by the debtor's principal residence may be treated with under § 1322(b)(5) ...").

The Bankruptcy Code consistently treats the holder of an undersecured creditor as the holder of two entirely separate claims, one secured, one unsecured. Thus, while unavoided lien claims survive a Chapter 7 discharge, they survive only to the extent of the lien. If a creditor is owed $100,000 and has collateral worth only $25,000, its $25,000 secured claim survives the Chapter 7 discharge (assuming the lien is not avoided). The $75,000 unsecured claim is discharged. 11 U.S.C. § 506(d); *Matter of Lindsey*, 823 F.2d 189 (7th Cir.1987).

By the same token, in Chapter 11 and 12, or 13 this hypothetical lien creditor has a $25,000 secured claim and a $75,000 unsecured claim for plan purposes. To treat the two claims as one fully secured claim for plan and distribution purposes would discriminate unfairly against the other unsecured creditors and prevent confirmation of the plan. *See, e.g.,* 11 U.S.C. §§ 1129(b)(1), 1222(b)(1) and 1322(b)(1). When the Bankruptcy Code alters this consistent pattern of bifurcation of undersecured claims into two separate claims, it does so very clearly. *See e.g.,* 11 U.S.C. § 1111(b). There is nothing in § 1322(b)(2) indicating a clear deviation from the normal statutory pattern and suggesting why Diamond, as an unsecured creditor, should get a significant advantage over other nonpriority unsecured creditors.

Finally, the court must note that while decisions from Circuits other than the 7th Circuit are not binding on it, it has given great weight in concluding that the debtors may bifurcate Diamond's claim to the fact that two Circuits have reached the same conclusion. *See Wilson v. Commonwealth Mort. Corp.*, 895 F.2d 123 (3rd Cir.1990); *In re Hougland*, 886 F.2d 1182 (9th Cir. 1989). The logic of those decisions is persuasive.

### CONCLUSION

This court will permit the Goins' Chapter 13 plan to modify the unsecured portion of Diamond's undersecured claim which is secured solely by the debtor's principal residence. Thus, when applying § 1322(b)(2) this court will first look to § 506(a) to determine the secured and unsecured components of Diamond's claim. Section 1322(b)(2) will prevent modification of that portion of Diamond's claim which is secured. Diamond's motion to dismiss the complaint under Bankruptcy Rule 7012 is denied. Diamond has 14 days from the entry of this order to answer the complaint. This proceeding is set for pretrial pursuant to Bankruptcy Rule 7016 on May 7, 1990 at 9:00 a.m. A preliminary pretrial order will issue forthwith.