In re Joseph S. ETCHIN, and Juanita J. Etchin, Debtors.

Joseph S. and Juanita J. ETCHIN, Plaintiffs,

v.

STAR SERVICES, INC., et al., Defendants.

Bankruptcy Nos. MM13–90–01960, MM13–90–01672.

Adv. No. 90–0204–13.

United States Bankruptcy Court, W.D. Wisconsin.

June 20, 1991.

Kenneth J. Doran, Kassner Law Offices, Middleton, Wis., for plaintiffs.

Jay J. Pitner, Gray & End, Milwaukee, Wis., for defendants.

## MEMORANDUM DECISION AND ORDER:

ROBERT D. MARTIN, Chief Judge.

Does § 1322(b)(2) of the Bankruptcy Code prohibit debtors from using Chapter 13 to reduce the balance due under their home mortgage to the fair market value of the mortgaged home? If debtors were permitted to do so, the mortgagee's lien would be "stripped down" to the value of the house at the time the case was filed. Also, upon completion of the payments required under their Chapter 13 plan, any amount unpaid on the mortgage in excess of that value would be discharged. For the reasons set out below, I conclude that the clear language of § 1322(b)(2) prohibits "lien stripping" in this case.

Joseph S. and Juanita J. Etchin own a house in Beloit, Wisconsin, which is subject to a real estate mortgage securing a debt to Star Acquisition Corporation, n/k/a Star Services, Inc. ("Star"). There is no other security for the debt. The terms of the mortgage call for interest at 10.375% and monthly installments of $587.25 through July 1992.

On December 8, 1989, Star commenced foreclosure proceedings in the circuit court for Rock County, Wisconsin. A judgment of foreclosure in the amount of $55,089.63 was entered on January 11, 1990. A sheriff's sale was scheduled for July 26, 1990.

On June 14, 1990, Juanita Etchin filed a petition under Chapter 7. On July 16, 1990, Joseph Etchin filed a petition under Chapter 13 and Juanita Etchin's case was converted to a Chapter 13 proceeding. In their identical but separately filed schedules, the debtors value their home at $32,200, state the total amount due to Star is $51,000.00, and state that two junior mortgagees are owed a total of $40,000. Both of the debtors' Chapter 13 plans provide for full payment of all unavoided real estate mortgages at 10.375% interest, and pro rata payment of unsecured claims from the remainder of the bankruptcy estate. The payments on unsecured claims are projected to be a small percentage of the total amount due. Joseph Etchin's plan calls for thirty-six monthly payments of $1,800.00, which are also treated as payments under Juanita Etchin's plan. Joseph's plan was confirmed on August 28, 1990 and Juanita's on September 15, 1990. On motion of the standing Chapter 13 trustee, the cases were ordered jointly administered on November 20, 1990.

On August 15, 1990, Star filed a proof of secured claim in the amount of $14,146.53. On October 15, 1990, it filed an amended proof of secured claim in the amount of $14,772.32. The claim includes only the arrearage on the debtors' mortgage, attorneys fees and costs, and interest. By filing the claim, Star apparently sought to have the mortgage arrearage paid from the plan payments made to the standing Chapter 13 trustee. Star has filed no claim for the balance otherwise due under the mortgage, presumably in contemplation of receiving direct payments from the debtors if the mortgage were to be reinstated. The debtors did not, however, request any reinstatement of their accelerated and foreclosed mortgage in their plan. Rather, on September 6, 1990, the debtors brought this adversary proceeding against Star and related entities, as well as the two junior mortgagees, seeking a determination of the amount of Star's secured claim, avoidance of Star's lien to the extent that its claim is unsecured, and avoidance of the junior mortgagees' liens in their entirety on the ground that neither possesses an allowable secured claim.

The debtors argue that under 11 U.S.C. § 506(a) the claim of Star is a secured claim only to the extent of their home's fair market value, less unpaid property taxes.[1]

---

**1.** 11 U.S.C. § 506 provides:
  (a) An allowed claim of a creditor secured by a lien on property in which the estate has an

interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an

The remainder due Star, they assert, is an unsecured claim entitled only to pro rata payments under the plan and subject to discharge upon completion of the plan. To the extent that Star's claim is unsecured, its lien would be void under 11 U.S.C. § 506(d).[2] In their complaint, the debtors set the fair market value of the house at $32,200.00 and the amount of unpaid property taxes for 1989 at approximately $1,470.00. Assuming that the total amount due Star is $51,000, as the debtors' schedules state, the Etchins are thus seeking to avoid the lien securing approximately $20,270.00 of Star's total claim.

On December 4, 1990, Star brought a motion to dismiss under F.R.C.P. 12(b)(6) and Bankruptcy Rule 7012. Star argues that 11 U.S.C. § 1322(b)(2) prohibits the bifurcation and partial avoidance of its mortgage ("the strip down") sought by the debtors. Section 1322(b)(2), it maintains, protects the secured status of its entire claim and precludes the use of § 506(d) to avoid any portion of the lien securing it.

## I

The issue of whether a Chapter 13 debtor may use § 506 to "strip down" home mortgages is the subject of great debate and inconsistent decisions in the various federal courts. The Third, Ninth, and Tenth Circuit Courts of Appeals have held that it is permitted by the Bankruptcy Code. *Wilson v. Commonwealth Mortgage Co.*, 895 F.2d 123, 127 (3rd Cir.1990); *In re Hougland*, 886 F.2d 1182, 1183 (9th Cir.1989); *In re Hart*, 923 F.2d 1410, 1415 (10th Cir. 1991).

A number of bankruptcy courts and district courts in other circuits are in agreement. *In re Bellamy*, 122 B.R. 856, 21 B.C.D. 287, B.L.R. ¶ 73,786 (Bankr.D.Conn. 1991); *In re McNair*, 115 B.R. 520 (Bankr. E.D.Va.1990); *In re Gadson*, 114 B.R. 453 (Bankr.E.D.Va.1990); *In re Moore*, 113 B.R. 239 (Bankr.E.D.Va.1990); *In re Shaffer*, 84 B.R. 63 (Bankr.W.D.Va.1988); *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984); *In re Frost*, 123 B.R. 254 (S.D.Ohio 1990); *In re Hill*, 96 B.R. 809 (Bankr.S.D.Ohio 1989); *In re Paige*, 13 B.R. 713 (Bankr.S.D. Ohio 1981); *In re Neal*, 10 B.R. 535 (Bankr. S.D.Ohio 1981); *Goins v. Diamond Mortg. Corp.*, 119 B.R. 156 (Bankr.N.D.Ill.1990); *In re Demoff*, 109 B.R. 902 (Bankr.N.D. Ind.1989); *In re Harvey*, 88 B.R. 863 (Bankr.N.D.Ill.1988); *In re Morphis*, 30 B.R. 589 (Bankr.N.D.Ala.1983).

An equally significant number of bankruptcy courts and district courts outside of the Third, Ninth, and Tenth Circuits have reached the opposite result. *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Schum*, 112 B.R. 159 (Bankr.N.D.Tex. 1990); *In re Bradshaw*, 56 B.R. 742 (S.D. Ohio 1985); *Matter of Stratton*, 30 B.R. 44 (Bankr.W.D.Mich.1983); *In re Simpkins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982); *In re Foster*, 61 B.R. 492 (Bankr.N.D.Ind.1986); *In re Sauber*, 115 B.R. 197 (Bankr.D.Minn. 1990); *Matter of Kaczmarczyk*, 107 B.R. 200 (Bankr.D.Neb.1989); *In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Chavez*, 117 B.R. 733 (Bankr.S.D.Fla.1990).

■ Neither the Seventh Circuit Court of Appeals nor the District Court for the Western District of Wisconsin has reported a decision on the issue and no unreported decision of either of those courts is known to exist. In the absence of controlling precedent, I conclude that the bifurcation and partial avoidance of an undersecured home mortgage by a Chapter 13 debtor runs afoul of the specific protection afforded to creditors whose claims are secured only by a debtor's principal residence under § 1322(b)(2). To hold otherwise would be contrary to the language of § 1322(b)(2) and ignore the fact that "lien stripping" necessarily entails modifying the rights of the creditor holding such a claim. In cases under Chapter 13, the specific provision of § 1322(b)(2) controls the general treatment of claims contained in § 506. Star's motion to dismiss is therefore granted.

---

unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim; ...

**2.** 11 U.S.C. § 506(d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...

## II

■ There is no question that § 506(a) of the Bankruptcy Code generally allows the bifurcation of an undersecured creditor's claim into two separate claims, one secured and the other unsecured. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Nor can there be any doubt that § 506(d) operates to void a lien on the unsecured claim which results from the bifurcation. *Matter of Lindsey*, 823 F.2d 189 (7th Cir. 1987). The real question in this case is whether § 1322(b)(2) provides a safe haven against the operation of § 506 in Chapter 13 for some creditors holding undersecured home mortgages. The proper starting point for this inquiry, of course, is "the language of the statute itself." *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030.

■ Section 1322(b)(2) provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

.  .  .  .  .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

This section authorizes debtors proceeding under Chapter 13, by the terms of their plans, to modify the rights of creditors, whether their claims are secured or unsecured. It also permits Chapter 13 debtors to simply leave their secured and unsecured creditors' rights unaffected. What § 1322(b)(2) does not allow, however, is the modification of the rights of holders of a "claim secured only by a security interest in real property that is the debtor's principal residence."

The most telling feature of the statute's language is its designation of "the rights of holders of secured claims" as what may not be modified. Were the statute to say merely that a secured claim may not be modified, the issue of lien stripping could be resolved far more easily. But it is the "rights of the holders" and not the "claims" alone which cannot be modified.

The language chosen for the statute can be easily explained. Chapter 13 was designed to offer simplified and expedited relief to consumers and other "small" debtors.[3] To achieve that end, many creditor protection provisions which apply to relief under other chapters of the Bankruptcy Code were not made applicable to Chapter 13. In addition to the obvious absence of provisions requiring a creditor's favorable vote on the plan and of protection for dissenting classes of creditors under the fair and equitable test which applies to Chapter 11, the drafters of Chapter 13 did not adopt the provisions for protection of rights in future appreciation of debtor's property which are provided in 11 U.S.C. § 1111(b). Under that section, a holder of a claim secured by property of the debtor's estate may elect to treat the claim as one with recourse and fully secured. By so electing, the creditor and not the debtor may receive the benefit of any appreciation of the collateral up to the full amount of the lien securing the amount due on the contract indebtedness, even if the value at the time of the reorganization is substantially less.[4] The rights under § 1111(b), together with the right to "credit bid" if there is a sale of the collateral during the administration of the case under § 363(k), effectively protect holders of secured claims in Chapter 11 from being "stripped down" without their consent.[5]

3. *Johnson v. Home State Bank, (In re Johnson )*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66.

4. *See* Stein, *Section 1111(b): Providing Undersecured Creditors with Postpetition Appreciation*, 56 Am.Bankr.L.J. 195 (1982); Carlson, *Undersecured Claims Under Bankruptcy Code Section 506(a) and 1111(b): Second Looks at Judicial Valuations of Collateral*, 6 Bankr.Dev.J. 253

(1989); Klee, *All You Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 Am.Bankr.L.J. 133 (1979).

5. When enacting Chapter 12 (relief for family farmers), which generally follows the language of Chapter 13, Congress provided neither the modification exception which is the subject of this decision, nor a counterpart to § 1111(b),

In Chapter 13, the reasons for denying lien stripping are far from compelling in the case of consumer loans secured by rapidly depreciating personal property which have been made in the highly competitive arena of consumer finance. But with respect to the debtor's principal residence, which is both the typically largest investment a consumer makes and a commodity subject to moderate and frequently upward fluctuations in value (there was generally rapid and substantial appreciation in residential real estate values at the time the Bankruptcy Code was drafted), the drafters of the Code did make a substantial effort to offer protection. That protection was to be provided by the exception to modification set out after the first comma in § 1322(b)(2). Protection was intended for all the "rights of holders of secured claims." Those rights include the right to credit bid with the unsecured portion of the debt at a foreclosure sale or otherwise to avail themselves of benefits from appreciation in the value of the property.[6] The exception was narrowly drawn to protect principal mortgage lenders and to avoid extending the protection to consumer financiers who insist on an interest in the debtor's homestead to secure personal property purchases or refinancings.

With an understanding of the purpose of the exception, it is much easier to see why the words of the statute should be given life and meaning and not be diminished by a technical reading advanced in the name of protecting a debtor's "fresh start." Although drafted with a lamentable economy of language, the exception attempts to afford specific and significant creditor protections. It should not be read out of the context of its development to create an ambiguity which can then be said to be resolved in favor of debtor protection. However, since technical arguments have been advanced and relied upon, we must consider them.

The first technical problem of statutory construction which needs to be addressed is whether the word "claim" in § 1322(b)(2)'s anti-modification clause, *i.e.*, that portion of the statute which reads "other than a claim secured only by a security interest in real property that is the debtor's principal residence," should be read to modify only the "secured claims" phrase which it follows. The Ninth Circuit Court of Appeals in *Hougland* opined that it should:

> [The anti-modification] clause follows the secured claim portion of the sentence and precedes the unsecured claim portion. Certainly it refers to what preceded it, and indicates that a secured residential real estate claim will have special protection. Indeed, if the referent of the "other than" clause is not the secured claim language which precedes it, what could the referent be? It would be most unusual if it were the unsecured language or the whole sentence. That strongly indicates that only the "secured claim" portion is protected. We disagree with the courts which have reasoned that section 1322(b)(2) is violated if the unsecured portion is affected by the plan, because that would "modify the rights" of a lender who only held a residential real estate mortgage. To reach that conclusion would require that we beg the question, for it postulates that the "other than" clause does refer to the unsecured portion of the claim.

*Hougland,* 886 F.2d at 1184 (citations omitted). The *Hougland* court's analysis of the syntax of § 1322(b)(2) is both representative of other decisions which have reached the same result, *see Wilson v. Commonwealth Mortgage Co.,* 895 F.2d at 127, and flawed. It transforms the rule of the last

precisely because it intended that rights of farm mortgage lenders be "stripped down" to preserve the operations of the family farm. For a summary of the legislative history of Chapter 12, *see* Andrea J. Winkler and Jean K. FitzSimmon, "Legislative History of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986," *Collier on*

*Bankruptcy,* app. 1, at 1813–14 (Matthew Bender, 15th ed. 1989).

**6.** *In re Christiansen,* 121 B.R. 63, 64 (Bankr.D. Colo.1990), *citing In re Dewsnup,* 908 F.2d 588, 592 (10th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991); *cf. Bellamy,* 122 B.R. at 859.

antecedent into the rule of the only referent. The rule of the last antecedent provides that a qualifying phrase must be applied to words or phrases immediately preceding it. *Bellamy*, 122 B.R. 856, *citing Wilshire Westwood Assoc. v. Atlantic Richfield Corp.*, 881 F.2d 801, 804 (9th Cir.1989), and *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985). Because the anti-modification clause begins with the qualifying phrase "other than," the rule of the last antecedent is applicable and the "secured claims" clause should be read as *one* of the referents of the anti-modification clause. Holders of home mortgages are, after all, a subclass within the more general classification of holders of secured claims.

■ The mistake in the *Hougland* court's reasoning is that it limits the pool of other possible referents of the anti-modification clause to either "the unsecured claim language or the whole sentence" and then dismisses them. *Hougland*, 886 F.2d at 1184. The court neglects to consider as referents the larger universe of claims which are defined in 11 U.S.C. § 101. Section 101(5)(A) provides that a "claim" includes both secured and unsecured claims. This definition of "claim" is applicable to § 1322(b)(2). 11 U.S.C. § 103(a). The court in *Hougland* takes an unreasonably narrow view of the reference. It seems merely to finesse the question of the phrase's meaning by criticizing a decision which deals explicitly with the definition of "claim". *Hougland*, 886 F.2d at 1184, *citing In re Hynson*, 66 B.R. 246 at 253 (Bkrtcy.D.N.J.1986). Ignoring § 101(5)(A), however, can hardly be the proper solution to the syntax problem posed by § 1322(b)(2). *See also In re Hart*, 923 F.2d at 1415.

■ It is more reasonable to conclude that the word "claim" in the anti-modification clause of § 1322(b)(2) protects the various rights of undersecured mortgage holders in Chapter 13. This conclusion is compelled for two reasons. First, it is an elementary precept of statutory construction that the definition of a term in the definitional section of a statute controls the construction of that term wherever it appears throughout the statute. *Fla. D. of Banking & Finance v. Bd. of Governors*, 800 F.2d 1534, 1536 (11th Cir.1986), *citing* Sutherland, 1A *Sutherland on Statutory Construction* § 20.08 at 88 (4th ed. 1985).

Second, § 1322(b) is one of those "cases when a close examination of the much-abused comma is helpful." *Hougland*, 886 F.2d at 1184. If it were not for the commas bracketing the anti-modification clause, § 1322(b)(2) would state that a Chapter 13 plan may "modify the rights of holders of secured claims other than a claim...." Congress avoided such a mismatch of plural and singular forms by inserting a comma, rather than by changing "claim" to "claims". Thus, the most reasonable reading of the syntax demonstrates an intent to maintain the independence of the anti-modification language from the "secured claims" language preceding it. *See Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030. This reinforces the conclusion that § 101(5)(A)'s definition of "claim," which is broad enough to include both secured and unsecured portions held by a single creditor, should be applied to § 1322(b)(2).

■ A second area of statutory construction which has apparently entertained the courts considering lien stripping in Chapter 13 is the meaning of the word "modify." Some courts seem to suggest that reducing the claim to only its secured portion and making new arrangements to pay that sum under the plan is not a "modification."

In *Matter of Clark*, 738 F.2d 869 (1984), the Seventh Circuit Court of Appeals provided some guidance as to what constitutes a modification under § 1322(b)(2).[7] The

---

7. In its review of the legislative history of § 1322(b), the Seventh Circuit focused in part on the Bankruptcy Laws Commission's Report, H.R.Doc. 137, pt. 2, 93rd Cong., 1st Sess. 204 (1973), on which the Bankruptcy Code was patterned:

Though the Commission's proposal differed from H.R. 8200 [the House version of the Bankruptcy Code] in that it treated claims secured by real property differently from those secured by personal property, it provides some insight into what was meant by

Chapter 13 debtor therein sought to cure a default on a home mortgage loan and reinstate the mortgage despite the fact that a state court had entered a judgment of foreclosure prior to the bankruptcy filing. The creditor argued that the debtor could not cure-and-reinstate, asserting that to do so would constitute an impermissible modification under § 1322(b)(2). The Seventh Circuit held to the contrary, finding that § 1322(b)(5) rather than § 1322(b)(2) applied and that a cure under the former is different from a modification under the latter. *Clark*, 738 F.2d at 872.

Section 1322(b)(5) provides the only exception to § 1322(b)(2)'s protection of the rights of home mortgagees. Under § 1322(b)(5), a debtor may reverse the acceleration of a mortgage debt by curing the default which prompted the acceleration. *Clark*, 738 F.2d at 872. Because acceleration upon default is a right established in the mortgage note, the de-acceleration and reinstatement of the original mortgage terms is arguably a modification within the meaning of § 1322(b)(2). However, § 1322(b)(5) specifically states that a debtor may cure a mortgage default "notwithstanding paragraph (2) of this subsection [§ 1322(b)]...." This is the one and only exception to § 1322(b)(2) included by Congress in the Bankruptcy Code. A debtor may not otherwise modify the rights of a holder of a claim secured only by a home mortgage. *In re Terry*, 780 F.2d 894, 897 (11th Cir.1985); *In re Chavez*, 117 B.R. 733, 735 (Bankr.S.D.Fla.1990).

The "stripping down" of an undersecured home mortgage under § 506, as the debtors attempt here, necessarily entails a modification of the mortgage holder's rights. The change in the amount due cannot be made without changing the size, frequency, or number of payments. It also changes the rights of the creditor on foreclosure or sale. Star holds a "claim secured only by a security interest in real property that is the debtor's principal residence" and is entitled to the protection

offered by § 1322(b)(2) against such modification.

### III

The conclusion that the debtors cannot reduce their obligations under the mortgage held by Star requires that the court reconsider the confirmations of the debtors' plans. A bankruptcy court's power to reconsider an order is well-recognized and in the Seventh Circuit is guided by F.R.C.P. 60(b):

In *Central Illinois Co. v. Irving Trust Co., (In re Pottasch Bros. Co., Inc.)*, 79 F.2d 613, 101 A.L.R. 1182 (2nd Cir.1935), Judge Hand held that a bankruptcy referee had the "ancient and elementary power" to reconsider an order. In *Wayne United Gas Company v. Owens-Illinois Glass Company*, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937), the Supreme Court held that the bankruptcy court has continuous powers to modify its own orders if no intervening rights are disturbed. [...]

However, the Seventh Circuit in the case of *Matter of Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir.1988), stated that the bankruptcy court's inherent powers to reconsider orders has [sic] been merged into the Bankruptcy Rules of Practice and Procedure and the Federal Rules of Civil Procedure. The *Met–L–Wood* Court stated as follows:

[...] Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time [....] Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b) [...] As a natural development from these cases, as well as from the text of Bankruptcy Rule

---

the term "modify." ... the Commission's explanatory note stated that the power to modify included authorization to alter "the size and timing of installment payments as well as

the alteration or modification of other provisions of the secured creditors' contract." *Id.* at 205.

*Clark*, 738 F.2d at 873.

9024, which applies Rule 60(b) to bankruptcy proceedings, [...] [w]e conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule.

*In re Leiter,* 109 B.R. 922, 924 (Bankr.N.D. Ind.1990).

■■■ Relief from judgment under Rule 60(b) may be granted *sua sponte* by the court.[8] *Nowicki v. United States,* 536 F.2d 1171, 1173 (7th Cir.1976). A decision under Rule 60(b) is a matter of the court's discretion. *Del Carmen v. Emerson Elec. Co.,* 908 F.2d 158, 161 (7th Cir.1990). The rule's requirement that relief be granted within a "reasonable time" also rests within the sound discretion of the court. *Nowicki,* 536 F.2d at 1175. While relief under Rule 60(b) is discretionary, it is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust. *Del Carmen,* 908 F.2d at 161. The court should also look to whether any intervening rights have been affected by the passage of time since the original judgment. *Nowicki,* 536 F.2d at 1175.

In this district, Chapter 13 plans are routinely and summarily confirmed prior to the final allowance of claims in order to hasten the commencement of payments to deserving creditors who are restrained by the § 362 stay and subjected to other significant delays in payment. The debtors'

plans were summarily confirmed prior to a final determination that they met all of the various requirements of the Bankruptcy Code. *See Matter of Driscoll,* 57 B.R. 322, 327 (Bankr.W.D.Wis.1986). The requirements of § 1325(a)(5) could not then be determined.[9] At the time the plans were confirmed, this adversary proceeding to determine whether the debtors would be permitted to "strip down" the liens of Star and the two junior mortgagees had yet to be commenced. The plans as filed presumed such a strip down and appeared able to meet § 1325(a)(5)(B)(ii)'s requirement of full payment of each allowed secured claim. The plans call for 36 payments of $1,800 for a total plan payment of $64,000. After subtracting approximately nine (9%) percent for administration expenses, there remained approximately $55,540 for payment of allowed claims. That sum was calculated to be sufficient to pay the present value of allowed secured claims, if the total of the allowed secured claims did not exceed the $32,000 value assigned to the home, and if the present value were calculated by using an interest rate of 10.375%.

■■■ Because it has now been determined that the debtors may not "strip down" the liens of Star, their plan payments will not now allow for full payment of all expenses of administration, other priority claims, and the present value of Star's entire claim.[10] The requirement of

---

8. F.R.C.P. 60(b) provides:

**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ...; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken ...

9. 11 U.S.C. § 1325(a)(5) requires that "with respect to each allowed secured claim provided for by the plan—
  (A) the holder of such claim has accepted the plan;
  (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
  (C) the debtor surrenders the property securing such claim to such holder; ..."

10. Although Star has not filed a claim for the full balance due on the mortgage, the 90 day bar date for filing claims contained in Bankruptcy Rule 3002(c) applies only to unsecured claims. *See* Bankruptcy Rule 3002(a). Therefore, Star's claim is assumed for this opinion to be no less than the $51,000 stated in the debtors' sched-

§ 1325(a)(5)(B)(ii) which was previously assumed to have been met has not been. As the secured creditors have not accepted the plan and it does not provide for surrender of the house, §§ 1325(a)(5)(A) and C) do not apply.

Under F.R.C.P. 60(b)(6) and Bankruptcy Rule 9024, I must vacate my August 28, 1990 and September 15, 1990 orders confirming the debtors' plans. Not to do so would permit the debtors to pay Star and possibly other secured creditors less than that to which they are entitled under § 1325(a)(5). Less than a year has passed since the orders confirming the plans were entered, which is well within a reasonable time for vacating those orders. Moreover, no material intervening rights have arisen in that time. The orders of August 28, 1990 and September 15, 1990 confirming the plans of Joseph Etchin and Juanita Etchin must be vacated. Star's motion to dismiss will be granted.

ules. To determine the present value which must be paid, the contract rate of interest (10.375%) must be applied to the deferred payments. Thus, without considering the amount which may be due to the junior mortgage holders, at least one of which holds no other collateral, the sum to be paid substantially exceeds the plan payments.