**In re Duane L. LINZMEIER, Debtor.**

**Duane L. LINZMEIER, Plaintiff,**

**v.**

**BULL'S EYE CREDIT UNION and Aetna Finance Company, dba ITT Financial Services, Defendants.**

**Bankruptcy No. WM13–90–03197. Adv. No. 90–0253–13.**

United States Bankruptcy Court, W.D. Wisconsin.

July 8, 1991.

George B. Goyke, Byrne & Goyke, S.C., Wausau, Wis., for debtor.

Alan Panek, Wisconsin Rapids, Wis.

William A. Chatterton, Ross & Chatterton, Madison, Wis., trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

### I.

The debtor, Duane L. Linzmeier, owns a house which is encumbered by two real estate mortgages. Neither mortgagee holds other security. On December 2, 1986 Bull's Eye Credit Union, ("Bull's Eye"), recorded its mortgage. The note secured by the mortgage provides that the principal sum of $23,224.67 is to be repaid with interest at ten percent (10%). Under the terms of the mortgage note, monthly payments of $218.77 each were required through October 5, 1990, and a balloon payment of $23,224.67 was due on November 5, 1990. However, on October 19, 1990 Bull's Eye took a foreclosure judgment on the house in the amount of $26,256.17.

On August 12, 1987 ITT Financial Services ("ITT"), recorded its mortgage on the debtor's house. The note secured by the mortgage provides that the principal sum of $8,602.27 is to be repaid with interest at eighteen percent (18%). Under the terms of the note, 120 monthly payments of $155.00 each were required, for a total payment of $18,600.00. ITT's mortgage was granted for this full $18,600.00 amount.

On November 14, 1990 the debtor filed his chapter 13 petition. On November 28, 1990, Bull's Eye filed a proof of secured claim in the amount of $26,364.20, representing $24,433.89 in principal amount and $1,930.31 in additional charges, based upon an interest rate of ten percent (10%) from and after February 13, 1990. On that same date, the debtor filed an adversary proceeding seeking, pursuant to Bankruptcy Rule 7001, to determine the extent of the mortgagees' liens on the real property, and, pursuant to 11 U.S.C. § 506(d), to void the liens to the extent that they are unsecured. In his complaint, the debtor asserted that as of November 28, 1990, accrued taxes on the house equalled $1,684.27, and that the 1989 real estate tax bill estimated the home's fair market value at $25,452; these assertions have not been contested.

On December 13, 1990 ITT filed its proof of claim in the amount of $8,014.32, plus interest. ITT's proof of claim indicated that the claim consisted of a $435.10 unsecured claim, and a $7,579.22 claim secured by ITT's mortgage on the house.

On December 18, 1990 the debtor's plan was confirmed. The plan provides for thirty-six (36) monthly payments in the amount of $292.03 each, for a total of $10,518.03. In addition to the mortgagees' claims, there exists a $4,000.00 claim which seeks interest at eleven-and-one-quarter percent (11.25%), secured by an automobile. The total value of those claims classified as unsecured approximates $7,952.16. As originally confirmed, the plan provided for an approximate four percent (4%) payment on unsecured claims; however, the plan was amended on June 10, 1991 to add another unsecured creditor, with the result that

unsecured claims will receive little or no dividend. With respect to the claims of the mortgagees, the plan provides:

3. Class three—Claims set forth below secured only by interests in real property that is the Debtor's principal residence. Defaults shall be cured and regular payments shall be made.

a. Bull[']s Eye Credit Union. Bull[']s Eye Credit Union is owed approximately $26,256.12 and is secured by a mortgage against Debtor's principal residence valued at $25,452.00. Debtor will make monthly payments of $218.77 at 10% interest outside the Plan. Debtor is currently in default 6 monthly payments totalling $1,312.62 with Bull[']s Eye Credit Union. Debtor will cure the default by making monthly payments of $36.46 under the Plan.

b. ITT Financial Services (ITT) is owed approximately $8,600.00 and is secured by a real estate mortgage against the Debtor's principal residence valued at $25,452.00. There currently exists [sic] as liens against the property real estate taxes of $966.63 and a first mortgage due Bull[']s Eye Credit Union of $26,256.12. There is no equity remaining to secure ITT's mortgage. Therefore, ITT shall be treated as an unsecured creditor under the Plan and ITT's mortgage shall be released.

On April 3, 1991 an order was entered allowing Bull's Eye's secured claim in the amount of $23,767.73, and treating the remainder of Bull's Eye's claim as unsecured. On April 24, 1991 an order approving claims was entered which approved Bull's Eye's secured claim in the amount of $28,232.33 (representing $26,364.20 on the mortgage and $1,868.13 on the arrearage). ITT's secured claim was approved in the amount of $7,579.20.

The debtor filed a timely objection to the April 24, 1991 order, contending, *inter alia*: "Claim 005, ITT Financial Services, has been treated in the confirmed plan as an unsecured claim. Additionally, a decision is pending in the adversary proceeding Linzmeier v. Bull[']s Eye Credit Union and ITT. Therefore, it should not be allowed as a secured claim." On May 20, 1991 the debtor filed a letter withdrawing his objection to the April 24, 1991 order allowing claims, based in part upon the chapter 13 trustee's alleged representation that "the claim of ITT will be placed on 'hold' until such time as Judge Martin reaches a decision in the pending adversary proceeding seeking to avoid ITT's lien under 11 USC Sec. 506(d)."

■ Insofar as the April 3, 1991 and April 24, 1991 orders addressed the claims of the mortgagees, the orders are vacated, and the extent to which the mortgagees' liens exist and may be avoided will be determined in this memorandum decision.[1]

### II.

The debtor seeks to "strip down" the mortgagees' liens so that their combined total, including accrued taxes, equals the value of the house at the time the case was filed, and to discharge the amount of the mortgages in excess of that value upon the completion of the payments under the chapter 13 plan. Specifically, valuing the house at $25,452.00, the debtor wishes to treat accrued real estate taxes in the amount of $1,684.27 as a first priority lien against the property, Bull's Eye's claim as secured as a second priority lien to the extent of $23,767.73, and unsecured as to the remainder ($2,488.39), and ITT's mortgage-based claim as unsecured in its entirety ($7,579.22). The debtor thus is seeking to avoid, pursuant to § 506(d),[2] the liens se-

---

**1.** Relief from an order may be granted *sua sponte* by the court. *Nowicki v. United States,* 536 F.2d 1171, 1173 (7th Cir.1976).

**2.** Section 506(d) provides:
To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

curing approximately $10,067.61 of the mortgagees' claims.

As an initial matter, it must be determined whether the mortgagees truly possess "secured claims." 11 U.S.C. § 506(a) addresses that which constitutes a secured claim:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Applying § 506(a) to the facts of the present case, valuing the house at $25,452.00 and taxes at $1,684.27, Bull's Eye possesses a $23,767.73 secured claim and a $2,488.39 unsecured claim. ITT's mortgage-based claim in the amount of $7,579.22 is entirely unsecured.

■ In *Etchin v. Star Services, Inc.*, (*In re Etchin*), 128 B.R. 662, 665 (Bankr. W.D.Wis.1991), this court held that 11 U.S.C. § 1322(b)(2) precludes a chapter 13 debtor's use of § 506(d) to bifurcate and avoid a home mortgage to the extent that the mortgage is undersecured, where the undersecured creditor is secured only by a security interest in the debtor's principal residence.[3] For the reasons stated in *Etchin*, this court concludes that the debtor cannot reduce his obligations under the mortgage held by Bull's Eye.

■ Although we are not required to reach the issue, it is important to note that the debtor cannot, (as he has attempted to do in his plan), simply reinstate Bull's Eye's mortgage under 11 USC § 1322(b)(5) by curing the arrearage within the plan and providing for monthly payments "outside" the plan in the amount of $218.77. Section 1322(b)(5) provides that:

Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

Section 1322(b)(5) is the sole exception to the limitation on modification of the rights of a holder of a claim secured only by the debtor's principal residence contained in § 1322(b)(2). In *Matter of Clark* the Seventh Circuit Court of Appeals, indicating that a "modification" under § 1322(b)(2) is different from a "cure" under § 1322(b)(5), concluded that cure-and-reinstatement of a mortgage pursuant to § 1322(b)(5) is permissible. *Matter of Clark*, 738 F.2d 869, 872 (7th Cir.1984).

While § 1322(b)(5) authorizes cure-and-reinstatement of a mortgage, under the terms of Bull's Eye's mortgage, the last payment, a balloon payment in the amount of $23,224.67, was due on November 5, 1990, a date prior to the November 14, 1990 date upon which the debtor's petition was filed. Thus, even if the debtor were to effect a "cure," Bull's Eye's mortgage is incapable of "reinstatement." The debtor is thus precluded from applying § 1322(b)(5) to cure-and-reinstate Bull's Eye's mortgage, and instead would have to treat the entire amount of Bull's Eye's claim in his plan.

---

**3.** Section 1322(b)(2) provides:

Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

■ Unlike Bull's Eye, ITT does not possess a secured claim. It is thus not entitled to § 1322(b)(2)'s protection from modification under the plan, as this protection applies only to the holders of secured claims. The debtor may accordingly exercise his right under § 506(d) to void the entire lien of ITT.

Because the debtor may not "strip down" Bull's Eye's lien, we must reconsider confirmation of the debtor's plan. F.R.C.P. 60(b); *Etchin*, 128 B.R. at 669–70. By purporting to "strip down" Bull's Eye's lien the debtor's plan violates § 1322(b)(2). Therefore, 11 U.S.C. § 1325(a)(1), which requires compliance with the provisions of chapter 13, has not been satisfied. Accordingly, the relief requested in the debtor's adversary complaint is denied, and the December 18, 1990 order confirming the debtor's plan must be vacated.