**In re John T. BROWN, Lydia Brown, Debtors.**

**Bankruptcy No. 88–00199–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 26, 1988.

Mitchell J. Singer, Alexandria, Va., for debtors.

Andrew C. Meehan, Alexandria, Va., for creditor.

Gerald M. O'Donnell, Alexandria, Va., trustee.

## MEMORANDUM OPINION

**MARTIN V.B. BOSTETTER, Jr., Chief Judge.**

The issue for determination is whether the curing of a default on a debtor's residential mortgage under chapter 13 merely should restore the parties to their previous positions under non-bankruptcy law, or whether the curing of a default requires that interest be paid on the arrearages.

John and Lydia Brown, debtors, filed a petition for relief under chapter 13 on February 3, 1988. The debtors' personal residence, provided for in the Browns' second amended plan, is secured by A.E. Landvoight, Inc. ("Landvoight/mortgagee"). The mortgagee objects to confirmation of the chapter 13 plan because it does not provide for costs plus interest on the debtors' arrearages, plus pre- and post-petition attorneys' fees.

At the crux of the parties' dispute is the applicability of sections 1322, 1325 and 506(b) of the Bankruptcy Code to the facts at hand. In view of their importance to our discussion below, we set forth the relevant subsections. Section 1322 provides in part that a chapter 13 plan may:

[b] (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or leave unaffected the rights of holders of any class of claims;

[b] (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322 (emphasis added). Section 1325(a)(5)(B)(ii) provides that the court shall confirm a plan, if with respect to allowed secured claims the plan provides that:

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

11 U.S.C. § 1325. Finally section 506(b) of the Code provides that:

[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Relying on the "plain language" of § 1322(b), the debtors contend that an award of interest on arrearages, plus pre- and post-petition attorneys' fees in the case at bar would constitute an impermissible modification of the mortgage contract, as neither are provided for in the mortgage instruments. Also relying on the "plain language" of § 1322, Landvoight contends that award of interest on arrearages while perhaps a modification is merely incident to the "cure" provided for under § 1322(b)(5). Landvoight then cites § 1325 and § 506(b) as explicit indications that a mortgagee, as a holder of a secured interest under the debtors' plan, is entitled to post-petition interest on arrearages.

We note here that relevant to the issue of interest on arrearages under § 506 is the value of the security, which must exceed the amount of the claim. No evidence was adduced on this issue at the hearing, the only indications of value being the debtor's schedules and Landvoight's proof of claim. Thus, we do not address whether interest on arrearages is due under § 506 at this time.

The issue of whether § 1325 read in connection with § 1322 requires the application of interest on arrearages has been addressed by three Courts of Appeal. The first circuit to attempt to reconcile the seemingly contradictory Code sections was the Sixth Circuit in *In re Colegrove*, 771 F.2d 119 (6th Cir.1985). In *Colegrove*, the court determined that the allowance of interest on arrearages would not constitute a modification of the loan agreement because an award of interest was "merely incident to the 'cure', which is excepted from the rule of section 1322(b)(2)." 771 F.2d at 122. The *Colegrove* court then noted that sections 506(b) and 1325(a) in guaranteeing interest for oversecured creditors, and ensuring secured creditors the receipt of the present value of their claim, respectively, supported the court's conclusion that the application of interest to the mortgagee's claim was permissible.

The Eleventh Circuit in *In re Terry*, reached the opposite conclusion based upon a more literal interpretation of § 1322 and its prohibition against altering the rights of residential mortgage lenders. 780 F.2d 894, 896 (11th Cir.1985) (modified on denial of rehearing, January 30, 1986); *see* 11 U.S.C. § 1322(b)(5). The *Terry* court concluded that the only permissible "modification" allowed under section 1322 was the curing of a default and the reinstatement of regular installment payments under § 1322(b)(5). *See id.* at 896.

While acknowledging that § 1325 required the payment of interest to over-secured creditors for the time value of money, the Eleventh Circuit noted that § 1325 was inapplicable to residential mortgages.

> The legislative history indicates that section 1322(b) was intended to create a special exception to section 1325(a)(5)(B). [The] latter section, intended for those creditors whose rights may be modified or whose collateral is subject to rapid depreciation, is irrelevant to a claim such as this one.

780 F.2d at 897. Consequently, the *Terry* court held that "under Chapter 13 of the Bankruptcy Code, a secured creditor who holds a security interest in the debtor's principal residence is not entitled to receive interest on arrearages, unless the mortgage contract so provides, when the debtor seeks to cure default and reinstate the mortgage." *Id.* at 895.

*In Appeal of Capps*, the Third Circuit provided additional insight into the issue of whether a Chapter 13 debtor who seeks to cure a home mortgage default must pay interest on mortgage arrearages. 836 F.2d 773 (3rd Cir.1987). While reaching the same conclusion as the Eleventh Circuit in *Terry*, the Third Circuit's opinion differs slightly in that it begins its analysis with the proposition that Congress did *not* consider the curing of a default as effecting a modification of creditors' interests. *See id.* at 775. Relying primarily upon the then recent decision of the Third Circuit in *Matter of Roach*, 824 F.2d 1370 (3rd Cir.1987), the *Capps* court claimed that support for this conclusion could be found in the legislative history of § 1322 and analagous provisions in the Code. *Id.; see Roach*, 824 F.2d at 1374–77. Accordingly, the court determined that section 1325(a)(5)(B)(ii), a "cramdown" provision applicable only to situations in which a chapter 13 plan has modified the loan contract, was irrelevant to situations involving cure and reinstatement. *See* 836 F.2d at 776. The court in *Capps* conceded that creditors certainly are affected by bankruptcy and a debtor's plan, but noted that Congress regarded the incidental adverse effect inherent in cures to be insignificant. *Id.*

> As the Senate Report concerning the cure provision under Chapter 11 indicates, Congress felt that '[t]he holder of a claim ... who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain.'

836 F.2d at 777 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5906, *reprinted in Collier* App. 3).

As the Eleventh Circuit in *Terry* has observed, "[t]here is simply no right or wrong to this argument." 780 F.2d at 895. In struggling to ascertain what Congress

actually intended and to harmonize seemingly contradictory Code sections, courts have come to various conclusions. *Compare In re Van Gordon*, 69 B.R. 545, 547 (Bankr.D.Mont.1987) (oversecured creditor entitled to interest on arrearages under § 506(b) and § 1325) *and In re Trigwell*, 67 B.R. 808, 810 (Bankr.C.D.Calif.1986) (interest on arrearages permitted under § 1325) *with In re Stamper*, 84 B.R. 519, 521 (Bankr.N.D.Ill.1988) (§ 1325(a)(5)(B)(ii) inapplicable to residential mortgages) *and In re Harmon*, 72 B.R. 458, 461 (Bankr.E.D. Pa.1987) (no right to interest on arrearages absent provision in mortgage agreement permitting such a charge). While recognizing that determinations of Congressional intent are inherently problematic, we must strive to reach a logical and fair conclusion until such time as Congress addresses the need for clarification of this issue.

■ Therefore, we conclude in accordance with *Terry* and *Capps* that subsections (b)(2) and (b)(5) of section 1322 of the Code provide for the unique treatment of claims held by residential mortgage lenders. Section 1322(b)(2) states that a debtor's plan cannot modify "a claim secured only by a security interest in real property that is the debtor's principal residence[,]" therefore, any modification of such a claim is simply impermissible. In concurrence with *Capps*, we further hold that the curing of a default does *not* constitute a modification of a creditor's claim, thereby rendering § 1325, the necessary precondition for which is a modification of the mortgage contract, inapplicable. *See Capps*, 836 F.2d at 776.

■ As *Collier* has noted:

section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII plan under the former Bankruptcy Act, with the debtor given a reasonable amount of time to cure defaults. Since that cure occurred under nonbankruptcy law, the interest and costs to which the mortgagee was entitled were determined under applicable nonbankruptcy law.

5 *Collier on Bankruptcy*, ¶ 1322.09[4] at 1322-21 (15th ed. 1988) (footnotes omitted). Consequently, when a default is cured under section 1322(b)(5), interest and costs will be determined in accordance with nonbankruptcy law. *See id.* In contrast, when the secured creditor's rights have been modified, a plan is not entitled to confirmation unless it provides for the full payment of the allowed secured claim including interest. *Id.; see* 11 U.S.C. § 1325(a)(5)(B)(ii).

■ Returning to the circumstances of the instant case, neither the Deed of Trust, nor the Deed of Trust Note, provide for interest on arrearages. Allowance of these charges, therefore, would constitute an impermissible modification of the contracts. The deed of trust note, however, expressly allows for the assessment of costs and reasonable legal fees which may arise with respect to any indebtedness on the debtors' property. The court in curing the default according to non-bankruptcy law may allow these costs as part of Landvoight's claim.

■ Although no evidence was offered at the hearing as to value, we note that the mortgagee in its proof of claim listed the following:

| | |
|---|---|
| Principal balance | $117,749.31 |
| Interest at 13% from 6/1/87—2/3/88 | 10,401.12 |
| Late charges 7/87—1/88 | 391.80 |
| Escrow deficit | 208.80 |
| Foreclosure attorney's fees | 1,252.00 |
| *Estimated* attorney's fees for representation in Bankruptcy Court | 725.00 |
| | $130,728.03 |

The proof of claim also states that the debtors' personal residence is valued at $145,000. The debtors' petition, on the other hand, estimates the same property to be worth $120,000. In the event that Landvoight's claim is undersecured, it would still receive payment in full because the contract cannot be modified.

Thus, it is in consideration of the mortgagee's protected status under § 1322, whether oversecured or undersecured, in addition to the same section's prohibition against modification of the loan contract,

and all the reasons set forth above that we conclude, based upon the evidence as presented, that the mortgagee cannot be allowed post-petition interest on arrearages under § 1322(b)(2) unless so provided for in the loan contract.

An appropriate Order will enter.