**In re Donald G. LANGE, Debtor.**

**STATE of OREGON, By and Through the DIRECTOR of the DEPARTMENT of VETERANS' AFFAIRS, and Associates Financial Services Company, Inc., a Delaware corporation, Appellant,**

v.

**Donald G. LANGE, Appellee.**

**BAP No. OR–89–1502–JMeV.**
**Bankruptcy No. 388–04260–S07.**
**Adv. No. 88–0560(S).**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Oct. 19, 1989.

Decided Oct. 24, 1990.

---

Daniel H. Rosenhouse, Portland, Or., for appellant.

Craig B. Cordon, Clackamas, Or., for appellee.

Before JONES, MEYERS and VOLINN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge.

The State of Oregon, Department of Veterans' Affairs ("DVA") appeals a bankruptcy court order reducing its lien on debtor's property to the value of the property pursuant to 11 U.S.C. § 506. We reverse.

## FACTS

This adversary proceeding was initiated when Chapter 7 debtor, Donald G. Lange, filed a complaint pursuant to 11 U.S.C. § 506(d) to avoid the undersecured portion of DVA's lien on his property. DVA holds a $46,000.00 consensual first mortgage against Debtor's residence. At the time the complaint was filed the property had a fair market value of $42,000.00. In response to Debtor's complaint, DVA filed a motion to dismiss pursuant to Bankruptcy Rule 7012. DVA's motion was premised on the argument that § 506 could not be used by a Chapter 7 debtor to void the undersecured portion of a mortgage lien. The court denied DVA's motion and declared DVA's lien void to the extent that the lien exceeded the property's value. DVA timely appealed.

## STANDARD OF REVIEW

The issue before us is one of statutory construction. We review issues of statutory construction *de novo*. *Trustees of Amalgamated Ins. Fund v. Geltman Industries*, 784 F.2d 926, 929 (9th Cir.1986) (interpretation of a statute is a question of law reviewed *de novo* ).

## DISCUSSION

■ The issue presented in this appeal is whether a Chapter 7 debtor may use 11 U.S.C. § 506 of the Bankruptcy Code to void the undersecured portion of a lien on real property. The language of § 506 provides a starting point for the inquiry into whether a Chapter 7 debtor can utilize § 506 to "strip down"[1] liens on property:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 533 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be deter-

---

**1.** The phrase "strip down" in the context of §§ 506(a) and (d) has gained some currency and refers to the process of reducing a secured claim to the value of the underlying collateral.

mined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

.     .     .     .     .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of the title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. §§ 506(a) and (d) (1985).

Under § 506(a), an undersecured allowed claim is bifurcated; the claim is secured to the extent of the value of debtor's interest in the collateral while the remaining portion of the claim is unsecured. Under § 506(d), a lien that secures a claim is void, with exceptions inapplicable to this case. The courts that have considered whether lien avoidance pursuant to § 506(d) is available in a Chapter 7 are divided.

The leading cases adopting the position Debtor urges are *Tanner v. FinanceAmerica Consumer Discount Co. (In re Tanner)*, 14 B.R. 933 (Bankr. W.D.Pa.1981) and *Gaglia v. First Federal Sav. and Loan Ass'n (In re Gaglia)*, 889 F.2d 1304 (3rd Cir.1989). In *Tanner,* the court concluded that a debtor could use § 506 to avoid a third mortgage lien on her home when the two prior mortgages had exhausted the alleged market value of the house. Relying on the explicit language of § 506 and the fresh start policy underlying the bankruptcy code, the court concluded that it was appropriate to permit Chapter 7 debtors to avoid liens on property abandoned to or exempted by them to the extent there is no supporting collateral value in the property. *Tanner,* 14 B.R. at 935.

In *Gaglia,* the Third Circuit agreed, rejecting the oversecured creditors' argument that § 506(a) does not apply where a debtor has no equity in the property in question. In *Gaglia,* the second mortgagee and its assignee argued that § 506(d) does not apply where a debtor has no equity in the property in question. They contended that because the debtors had no equity in the property and the property would not be administered, the estate likewise had no interest in the property. However, this argument was rejected by the Third Circuit which noted that such an interpretation of § 506(a) would conflict with the plain meaning of § 506(d). Moreover, the court pointed out that pursuant to 11 U.S.C. § 541 all of a debtor's right and title to property including the legal title to the property secured by a mortgage passes to the estate when a Chapter 7 petition is filed. "Thus, even though the [debtors] had no equity in the property, the estate had an interest in it," the Third Circuit concluded. *Gaglia,* 889 F.2d at 1308. Based on this rationale, the court permitted a Chapter 7 debtor to use § 506(d) to void a lien on the unsecured portion of the debt—thereby implicitly sanctioning the avoidance of liens in a Chapter 7 case even when the purpose is to reduce the secured debt to the fair market value of the lien in an effort to redeem or otherwise retain the property for the sole benefit of the debtor.[2]

Other courts have agreed with this view, adopting the premise that the plain language of § 506 contemplates its use by Chapter 7 debtors. *E.g., Folendore v. U.S. Small Business Administration (In re Folendore)*, 862 F.2d 1537 (11th Cir.1989). Still other courts, following the lead of *In re Mahaner*, 34 B.R. 308 (Bankr.W.D.N.Y. 1983), have denied a Chapter 7 debtor's use of § 506 to avoid a lien on non-estate property as being contrary to the purpose of the Bankruptcy Code when all Code provisions are fully considered. *See Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588 (10th Cir.1990); *In re Mammoser*, 115 B.R. 758 (Bankr.W.D.N.Y.1990); *D'Angona v. Marine Midland Bank (In re D'Angona)*, 107 B.R. 448 (Bankr.D.Conn.1989); *Doty v. Security Trust & Savings Bank (In re*

---

**2.** *See* footnote 3, *infra.*

*Doty)*, 104 B.R. 133 (Bankr. S.D. Iowa 1989); *Larson v. Alliance Bank (In re Larson)*, 99 B.R. 1 (Bankr. Alaska 1989); *In re Shrum*, 98 B.R. 995 (Bankr.W.D. Okla.1989); *Maitland v. Central Fidelity Bank (In re Maitland)*, 61 B.R. 130 (Bankr.E.D.Va.1986). In *Dewsnup*, the Tenth Circuit noted the various reasons stated by these courts for denying relief under § 506. These reasons include: 1) that abandoned property is not administered by the estate and therefore §§ 506(a) and (d) have no application; 2) that allowing this relief inequitably gives debtors more in a Chapter 7 liquidation than they would receive in the reorganization chapters; and 3) that allowing lien avoidance pursuant to § 506(d) renders the redemption provision found in Code § 722 meaningless. *Dewsnup*, 908 F.2d at 589–590.

On balance, we find that the analysis of *In re Dewsnup* and its progeny better reconciles the various provisions of the Bankruptcy Code. In *Dewsnup*, the Tenth Circuit articulated two reasons for rejecting the Third Circuit approach. "First," the court said, "we reject the notion that section 506(d) must be read in isolation." *Dewsnup*, 908 F.2d at 591. Rather, the Tenth Circuit reasoned that courts should look to the provisions of the whole law, and to its object and policy. "Second," the court noted, "the Third Circuit's rationale does not adequately recognize the [e]ffect of abandonment with its resulting consequences, including reversion of the property to pre-bankruptcy status." *Id.* The court reasoned that to permit strip down after abandonment would defeat the purpose behind the abandonment provision and run counter to the plain language of the Code.

While the property in the present case has not been abandoned[3], we find *Dewsnup's* characterization of § 506 as serving to implement a host of other Code provisions

to be controlling. To begin, we believe that § 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code. In our view, the "plain meaning" of subsections (a) and (d) of § 506 is readily discernible when read in the context of the Code. These subsections are found in subchapter I of Chapter 5 captioned "Creditors and Claims." Subchapter I is integral to the distribution process and simply interacts with and implements the remedial chapters of the Code. In other words, § 506(d) provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se.

We believe that this statutory interpretation is bolstered through further review of the creditors rights provisions. Specifically, the Code and the legislative history strongly encourage repayment plans rather than liquidation. As the court in *Dewsnup* noted, Congress has provided numerous incentives to debtors choosing reorganization or rehabilitation under Chapters 11, 12 or 13 rather than liquidation under Chapter 7. Consequently, it is unlikely that Congress intended § 506 to be interpreted in a manner that permits a debtor to avoid consensual liens on his residence in Chapter 7 that could not be removed in one of the rehabilitative Chapters.

To illustrate, in a Chapter 11 proceeding a creditor can make an election which would result in allowing its secured lien to remain on the property to the full extent of the original obligation. *See* 11 U.S.C. § 1111(b)(2) (1985); 5 *Collier on Bankruptcy*, ¶ 1111.02 (L.P. King 15th ed. 1989) ("Section 1111(b) represents an attempt by Congress to create a balance between the debtor's need for protection and a creditor's right to receive equitable treatment.... [S]ection 1111(b) protects the legitimate expectation of the secured lender

---

**3.** It is well settled, that in bankruptcy cases, property which is worthless, overburdened or, which for any other reason yields no benefit to the general estate, is routinely abandoned by the trustee. *See* 4 *Collier on Bankruptcy*, ¶ 554.01, at 554–2 (L.P. King 15th ed. 1989) (cases cited at n. 3). In the present case, although no formal

abandonment proceeding has been initiated, it is clear from the circumstances that the property is not worth administering because of its inconsequential value. Accordingly, absent a formal abandonment proceeding, the property will be abandoned when the case is closed pursuant to 11 U.S.C. § 554(c).

that the bankruptcy laws will be used only as a shield to protect debtors and not as a sword to enrich debtors at the expense of secured creditors.") However, if an election is not made, the creditor still receives payments on the allowed amount of the claim while the creditor retains his or her lien on the unsecured portion of the debt. 11 U.S.C. § 1129(b)(2)(A)(i) (1987). In otherwords, whether or not an election is made, the holder's lien remains on the unsecured portion of the debt.

Likewise, in a Chapter 13, § 1322(b)(2) prohibits the debtor from modifying the mortgage if it is on its principal residence and if the creditor holds no other security. *See* 11 U.S.C. § 1322(b)(2) (1987). While the debt may be severed into secured and unsecured portions for treatment under the plan, *see Hougland v. Lomas & Nettleton Co. (In re Hougland)*, 886 F.2d 1182 (9th Cir.1989), the terms of the debt including payments may not be restructured. A debtor would have little motivation for a Chapter 13 remedy with its strictures and trustee supervision if § 506 alone could be used in a Chapter 7 to effect a strip down of the lien. Accordingly, in our view, § 506 is not the stand alone avoidance provision *Gaglia* mandates that it become; rather, we believe that § 506 serves a very plain and important function, namely the implementation of a host of other provisions of the Code.

As suggested by the court in *Dewsnup*, a lien avoided under § 506(d) should be preserved for the benefit of the estate not the debtor. Hence, if the lien is not disposed of, it is to be returned to the former lienholder pursuant to 11 U.S.C. § 725. Contrarily, § 722 constitutes the only redemption remedy Congress provided Chapter 7 debtors. *See* 11 U.S.C. § 722 (1987). Accordingly, we find it unlikely that Congress intended a liquidating debtor to remove, for his or her sole benefit, encumbrances in excess of the value of the real property.

Nevertheless, in *Gaglia* the court dismissed this position by assuming that the use of § 506(d) for avoidance purposes merely duplicates what would transpire in a liquidation. However, this rationale assumes that a third party unrelated to the transaction will purchase the property at a forced sale, thus prohibiting lienholders from reaping the benefits of any appreciation in land values. In reality, a senior lienholder often purchases the property and sells it at a later time in anticipation of a change in land values, or a junior lienholder purchases the property, pays the senior lienholder and sells it at a later time in hope of decreasing the amount of the loss. Consequently, to allow a Chapter 7 debtor strip down relief would deny creditors these options while giving debtors much more than the "fresh start" to which they are entitled. Clearly, it was not Congress' intent to allow debtors more 'in a liquidation than they would receive in a reorganization.

■ As the Tenth Circuit points out in *Dewsnup*, Congress provided Chapter 7 debtors with § 722 in order to permit them to "redeem tangible personal property intended primarily for personal, family, or household use." *See* 11 U.S.C. § 722 (1987). This section constitutes the only redemption provision provided for Chapter 7 debtors. Notably, it only pertains to personal property. In *Maitland*, the court correctly identified the problem when it stated: "In light of the exclusion of real property in § 722 and its express limitation to specific tangible personal property, it is obvious that Congress did not intend to permit a debtor to redeem his real property through the use of § 506(d)." *Maitland*, 61 B.R. at 135.

Here, Debtor seeks to do exactly what § 722 provides, except with respect to real property. As the court in *Dewsnup* correctly noted, under these circumstances, § 506 would be used as a redemption provision. We find this result to be both inequitable and unfair as it would constitute an expansion of debtor's rights far beyond what is contemplated in the Code.

Additionally, to allow comparable lien avoidance on real property pursuant to § 506(d) would render § 722 superfluous. One must presume that § 722 is not surplusage under the fundamental rule of statutory construction. Both the United

States Supreme Court and the Ninth Circuit Court of Appeals have consistently held that a statute should be interpreted so as not to render one part inoperative. *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Anna,* 472 U.S. 237, 248–249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Cook Inlet Native Ass'n v. Bowen,* 810 F.2d 1471, 1474 (9th Cir.1987); *In re Loretto Winery, Ltd.,* 107 B.R. 707, 709 (9th Cir. BAP 1989) (settled principle of construction that statute not be rendered inoperative or superfluous, and all the words employed by Congress to be given effect). Hence, where two meanings are possible, the Court should choose the meaning that gives the fullest effect to all provisions of the statute. To this end, our determination that § 722 is the exclusive Chapter 7 redemption provision is consistent with this statutory construction theme. Specifically, our construction of § 722 does not render § 506 inoperative since § 506 has considerable meaning in Chapters 11 and 13 regarding the treatment of secured claims and in Chapters 7, 9, 11 and 13 where the property is being sold by the estate.

## CONCLUSION

Premised on an overall reading of the Bankruptcy Code and despite a superficial interpretation of § 506(d) as a separate avoiding power to benefit a Chapter 7 debtor, we find that § 506(d) is not available to Debtor to avoid the lien held by DVA. Accordingly, we REVERSE, aligning ourselves with those cases denying debtors the right to use § 506(d) as a separate avoiding power.