In re John Robert DYER and Beverly Jean Dyer, Debtors.

Bankruptcy No. B-91-01445-PHX-SSC.

United States Bankruptcy Court, D. Arizona.

June 23, 1992.

---

Michael Hickman, Mesa, Ariz., for debtors.

Anne M. Kimmick, Law Offices of Holbert & Moss, La Mesa, Cal. and Robert R. Hall, Hammerman & Hultgren, P.C., Phoenix, Ariz., local counsel, for Associates Nat. Mortg. Co.

Ralph McDonald, Phoenix, Ariz., Chapter 13 Trustee.

## MEMORANDUM DECISION AND ORDER

SARAH SHARER CURLEY,
Bankruptcy Judge.

### Preliminary Statement

This Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 157 and 1334; General Order No. 128 of United States District Court, District of Arizona. This Decision shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052, *Rules of Bankruptcy Procedure.* On April 14, 1992, this Court rendered its decision on the record. This written Memorandum Decision and Order expands upon that oral decision, with the Court considering a Bankruptcy Appellate Panel decision and a decision of the Court of Appeals, Second Circuit, which were not discussed by the Court at the time of the oral decision on the record.

### Factual Discussion

John Robert Dyer and Beverly Jean Dyer, the Debtors, filed a Chapter 13 petition [1] on February 7, 1991. The Debtors initially filed a plan of reorganization, which was later amended. The amended plan was filed with the Court on or about March 27, 1991. Two objections to confirmation were interposed to the amended plan. The objection of Associates National Mortgage Company ("Associates") was filed on May 17, 1991, and the *pro se* objection of Jeffrey Wagner and Mary Wagner (the "Wagners") was filed on April 10, 1991. Thereafter, the Court scheduled an evidentiary hearing to determine the merits of the objections. The evidentiary hearing was held on January 28, 1992. However, the Wagners were not in attendance at the hearing. The Wagners' absence is not material to this Decision, since Associates vigorously presented its position at the time of the hearing, and its position was aligned with that of the Wagners.

At the time of the hearing, the argument of Associates and the Wagners was that the value of the Debtors' residence exceeded the amount of the indebtedness and, hence, that Associates and the Wagners were oversecured. The Debtors' position was that the residence had declined in value, that Associates was an undersecured creditor, and that the Wagners had become unsecured creditors.

On January 28, 1992, the Court heard evidence concerning the value of the residence and the aggregate amount of the indebtedness that encumbered the real property. At the conclusion of the hearing, the Court determined that the residence had a value of $77,000.

Because Associates had shown at the hearing that its indebtedness was in the amount of $79,202.79, the Court bifurcated the Associates' claim. Associates had a secured claim in the amount of $77,000 (the value of the Debtors' residence), and an unsecured claim in the amount of $2,202.79.

The Wagners, of course, originally also had a lien against the property. The Wagners had sold the property to the Debtors, providing purchase-money financing. At the hearing, because of the value of the Debtors' residence, the Court held the Wagners' claim to be unsecured. That particular claim was found to be in the amount of $2,000.

At a confirmation hearing on February 14, 1992, this Court noted that the Supreme Court had recently rendered the decision of *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The Court requested the parties present posttrial memoranda of law to focus on the *Dewsnup* decision. The Court was concerned that it might have to reconsider its findings of fact and conclusions of law set forth on the record on January 28. The Court was also concerned that other relief should be accorded to the various parties as a result of the *Dewsnup* decision.

---

**1.** Unless specifically noted to the contrary, all references in this Decision are to the Bankrupt-

cy Reform Act of 1978, as amended (the "Bankruptcy Code").

On or about February 24, 1992, this Court did execute an interim order concerning the January 28 hearing. The Court initially bifurcated the Associates claim and noted that the Wagners had an unsecured claim.

### Issue

Whether the Supreme Court decision of *Dewsnup v. Timm* prohibits the bifurcation of a claim into a secured and an unsecured claim, if the creditor is determined to be an undersecured creditor, or prohibits the avoidance of a lien encumbering the Debtors' principal residence in a Chapter 13 proceeding. In essence, does *Dewsnup v. Timm* overrule the Ninth Circuit decision of *In re Hougland*? [2]

### Legal Discussion

The decision of *Dewsnup v. Timm* should not be reviewed without reference to other precedent. The reasoning in *Dewsnup* relies upon an earlier United States Supreme Court decision; specifically, the decision of *Johnson v. Home State Bank*, — U.S. —, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

The debtor, in *Johnson*, had executed a number of promissory notes in favor of a secured creditor, and the aggregate amount of those promissory notes was $470,000 at one point in time. Those particular notes were secured by various liens against certain real property. Subsequently, the debtor was unable to make payments on those notes, and the debtor filed a Chapter 7 bankruptcy proceeding. During the course of the Chapter 7 bankruptcy proceeding, the debtor did not challenge the validity of the secured creditor's claim or lien, and the debtor obtained a discharge. At the conclusion of the Chapter 7 proceedings, the debtor still owed the sum of $200,000 to the secured creditor. [3]

Thereafter, the debtor was once again unable to make payments to the secured creditor, and the debtor filed a Chapter 13 proceeding. The debtor then proceeded to propose a Chapter 13 plan of reorganization that would require the remaining indebtedness in the amount of $200,000 to be paid over a four-year period. The debtor proposed to make those payments in annual installments, with a balloon payment at the end of the plan term. The secured creditor filed an objection to the confirmation of the plan. [4]

The issue to be determined was whether a creditor had a "claim" in a Chapter 13 proceeding, if the personal liability of the debtor to the creditor had been discharged in the Chapter 7 proceeding and only the creditor's lien against the real property and the ability of the creditor to foreclose its lien (if payments were not made to the creditor) remained.

The Supreme Court, in *Johnson*, initially discussed the nature of a discharge order in the Chapter 7 proceedings. The discharge order prohibited the creditor from executing upon the indebtedness owed by the debtor to the creditor to the extent it was a personal liability of the debtor. The Court noted that there still remained an interest of the creditor after the discharge of the personal liability. The Court focused on this residual interest as an *in rem* interest.

A defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. See 11 U.S.C. § 727. However, such a discharge extinguishes *only* "the personal liability of the debtor." 11 U.S.C. § 524(a)(1). Codifying the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the

---

**2.** *In re Hougland*, 886 F.2d 1182 (9th Cir.1989).

**3.** The debtor apparently reduced the amount of the secured indebtedness prior to the filing of the Chapter 7 proceeding.

**4.** One of the issues presented in the case was whether the debtor could obtain a discharge in a Chapter 7 proceeding and then file a Chapter

13 petition; that is, was a so-called "Chapter 20" permissible? The Court concluded that there was nothing inherently improper about filing a Chapter 7 proceeding, obtaining a discharge, and then filing a Chapter 13 petition. However, the debtor should be proceeding in good faith. *Id.*, — U.S. at —, 111 S.Ct. at 2156, 115 L.Ed.2d at 77.

mortgage survives or passes through the bankruptcy. [Citations omitted.]

*Id.,* —— U.S. at ——, 111 S.Ct. at 2153, 115 L.Ed.2d at 74.

The Court noted that pursuant to 11 U.S.C. § 101(5),[5] the term "claim" had a broad definition, and noted that even if the debtor's personal liability were discharged, there was still this "enforceable obligation" that the creditor had. For instance, if the property were foreclosed upon and sold, the creditor would then have a right to the foreclosure sale proceeds. This was a "right to payment." The creditor's ability to foreclose might also be considered an "equitable remedy". If the creditor did not receive payments on its lien, it had the ability to proceed with the equitable remedy of foreclosure.

Therefore, the Supreme Court concluded that even though the personal liability portion of the indebtedness had been discharged in the Chapter 7 proceeding, the *in rem* nature of the claim still existed, and the *in rem* claim could be paid in a Chapter 13 plan.

At 111 S.Ct., page 2155 of the Supreme Court decision in *Johnson,* the Supreme Court discussed the impact of its decision. The discharge of the debtor in the Chapter 7 proceedings transformed a negotiated obligation, with both an *in rem* and *in personam* aspect, into a *nonrecourse claim.*

> ... [W]e must infer that Congress fully expected that an obligation enforceable only against a debtor's property would be a "claim" under § 101(5) of the Code.... The legislative history surrounding § 102(2) directly corroborates this inference. The Committee Reports accompanying § 102(2) explain that this rule of construction contemplates, *inter alia,* "nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally." H.R.Rep. No. 95–595, *supra,* at 315; accord, S.Rep. No. 95–989, *supra,* at 28, U.S.Code Cong. & Admin.News 1978, pp. 5814, 6272. Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan. It is true, as the Court of Appeals noted, that the debtor and creditor in such a case did not conceive of their credit agreement as a nonrecourse loan when they entered it. [Citation omitted.] However, insofar as Congress did not expressly limit § 102(2) to nonrecourse loans but rather chose general language broad enough to encompass such obligations, we understand Congress' intent to be that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence.

*Id.,* —— U.S. ——, 111 S.Ct. at 2155, 115 L.Ed.2d at 76.

*Dewsnup* is a logical extension of *Johnson.* In *Dewsnup,* the real property was valued at $39,000; however, the property was encumbered by an indebtedness in the amount of $120,000. The facts in *Dewsnup* are unusual in that the property had already been abandoned from the bankruptcy estate.[6] Section 506(a) provides in pertinent part:

**5.** 11 U.S.C. § 101(5) provides in pertinent part:

§ 101. Definitions.
In this title—

\*    \*    \*    \*    \*    \*

(5) "claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment,

fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**6.** On the issue of abandonment, 11 U.S.C. § 554 provides:

§ 554. Abandonment of property of the estate.
(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest *in the estate's interest in such property,* or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. [Emphasis added.]

Once the property had been abandoned, the bankruptcy estate no longer had "an interest in such property," and the Court did not have to address the issues under Section 506(a). However, there was a conflict among the Circuit Courts as to the interpretation of 11 U.S.C. § 506(d), and this may have prompted the Supreme Court to interpret the issues raised under Section 506.

In *Dewsnup,* the Supreme Court determined that Section 506(a) should still be utilized, with an undersecured creditor to have a secured and an unsecured claim. However, the Supreme Court then interpreted Section 506(d), in essence the critical language concerning an "allowed secured claim," in a different manner. The Court interpreted Section 506(d) to mean that if a creditor had a claim that was *not allowed,* to the extent that the claim was secured by a lien on real property, the lien could also be avoided.

The Court, in *Dewsnup,* refers to the *Johnson v. Home State Bank* decision. Reenforcing the concept of an *in rem* claim, or an *in rem* interest, the Supreme Court, in *Dewsnup,* emphasizes that a creditor may retain only an *in rem* claim or interest at the conclusion of the bankruptcy proceedings. The claim or interest that permitted the creditor to proceed against the debtor's real property, as well as the ability to proceed personally against the debtor, is transformed into a nonrecourse claim as a result of the bankruptcy proceedings. The Court then stated that Section 506(d) did not permit the avoidance of such a lien which secured only an *in rem* claim. The decision of *Dewsnup* is consistent with *Johnson* as to this idea of an *in rem,* or nonrecourse, claim existing at the end of the bankruptcy proceedings.

These Supreme Court cases may be interpreted in a manner to provide continued vitality to the Ninth Circuit decision of *In re Hougland,* 886 F.2d 1182 (9th Cir.1989).

In *Hougland,* the Ninth Circuit did not focus on Section 506(d).[7] The Court relied only on Section 506(a) in determining to what extent a claim might be bifurcated in a Chapter 13 proceeding, and to what extent Section 1322(b)(2)[8] prohibited that bifurcation. The Ninth Circuit stated that Section 1322(b)(2) permitted the claim of a creditor to be bifurcated into a secured and unsecured claim and that only the secured claim (to the extent that it pertained to an indebtedness secured only by a lien on the debtor's principal residence) might not be

---

inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under Section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under section (a) or (b) of this section and that is not administered in the case remains property of the estate.

**7.** Interestingly enough, the lower Court decision had determined that the lien could be avoided

pursuant to Section 506(d). *In re Hougland,* 93 B.R. 718 (D.Or.1988).

**8.** 11 U.S.C. § 1322(b)(2) provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\*   \*   \*   \*   \*   \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

modified by the debtor in a Chapter 13 plan as to the terms of repayment.

Initially, the language in Section 1322(b)(2) refers to a secured and unsecured claim, but the Section also contains an exception. The language contained in the exception does not refer to a "secured claim". It refers only to a particular creditor with a claim that has a lien against the debtor's principal residence, and states that said lien cannot be modified. Of course, to the extent that the Section is ambiguous, the Legislative History for the Section should be consulted.[9]

The Courts have struggled with the interpretation of 11 U.S.C. § 506(a) and the Section's interrelationship with, or modification of, 11 U.S.C. § 1322(b)(2) concerning those creditors with unsecured or undersecured claims that previously obtained liens encumbering the debtor's principal residence to secure repayment of the creditors' indebtedness. *In re Hart*, 923 F.2d 1410 (10th Cir.1991); *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3rd Cir. 1990); *In re Hougland*, 886 F.2d 1182 (9th Cir.1989); *In re Nobelman*, 129 B.R. 98 (N.D.Tex.1991); *In re Harris*, 94 B.R. 832 (D.N.J.1989); *In re Russell*, 93 B.R. 703 (D.N.D.1988); *In re Hussman*, 133 B.R. 490 (Bankr.D.Minn.1991); *In re Etchin*, 128 B.R. 662 (Bankr.W.D.Wis.1991); *In re Mitchell*, 125 B.R. 5 (Bankr.D.N.H.1991); *In re Chavez*, 117 B.R. 733 (Bankr.S.D.Fla. 1990); *In re Sauber*, 115 B.R. 197 (Bankr. D.Minn.1990); *In re Schum*, 112 B.R. 159 (Bankr.N.D.Tex.1990); *In re Frost*, 96 B.R. 804 (Bankr.S.D.Ohio 1989), *aff'd*, 123 B.R. 254 (S.D.Ohio 1990); *In re Kehm*, 90 B.R. 117 (Bankr.E.D.Pa.1988); *In re Brown*, 91 B.R. 19 (Bankr.E.D.Va.1988); *In re Catlin*, 81 B.R. 522 (Bankr.D.Minn.1987); *In re Caster*, 77 B.R. 8 (Bankr.E.D.Pa.1987); *In re Hemsing*, 75 B.R. 689 (Bankr.D.Mont. 1987); *In re Simmons*, 78 B.R. 300 (Bankr. D.Kan.1987); *In re Hynson*, 66 B.R. 246 (Bankr.D.N.J.1986); *In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984); *In re Spadel*, 28 B.R. 537 (Bankr.E.D.Pa.1983); *In re Neal*, 10 B.R. 535 (Bankr.S.D.Ohio 1981).

In light of the *Dewsnup* decision, three approaches have perhaps developed concerning the creditor that only has a lien on the debtor's principal residence. One approach permits the bifurcation of the creditor's claim into a secured and unsecured claim, but prohibits the avoidance of the lien if the debtor does *not* propose to pay off the entire secured claim in the reorganization plan. *In re Zeigler*, 1992 WL 50006 (Bankr.E.D.Pa.1992); *In re Taras*, 136 B.R. 941 (Bankr.E.D.Pa.1992). Another approach is to follow strictly Section 1322(b)(2) (and utilize *Dewsnup* as further support therefor), prohibit bifurcation of the creditors' claim, and prohibit any avoidance of the creditor's lien. *In re Davidoff*, 136 B.R. 567 (Bankr.M.D.Fla.1992); *In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla. 1992).[10] Finally, a third approach is to permit bifurcation of the claim and avoidance of the lien as to the unsecured portion of the indebtedness. At least one Court may have so ruled in *dicta*. *In re Bellamy*, 22 BCD 1476, 962 F.2d 176 (2nd Cir. 1992). This Court believes that the first approach must be followed in light of the *Dewsnup* and *Hougland* decisions.

Because *Hougland* does not rely on Section 506(d) in its reasoning, this Court may initially follow *Hougland* in bifurcating a claim into a secured and unsecured portion in a Chapter 13 proceeding. However, in reviewing *Dewsnup* and *Johnson*, this Court must next conclude that a Chapter 13 Plan may not vitiate or avoid the lien that is secured only by the debtor's principal residence. The claim is affected. The Debtors may make payments on the secured portion of the claim during the course of the Chapter 13 proceedings. The unsecured claim, after bifurcation, may then be paid as any other unsecured claim.

---

9. At least one appellate court has noted the ambiguity of Section 1322(b)(2). *In re Harris*, 94 B.R. 832 (D.N.J.1989). *Contra, In re Bellamy*, 22 BCD 1476, 962 F.2d 176 (2nd Cir.1992); *In re Hougland, supra.*

10. On April 14, 1992, this Court referred to the analysis set forth in *In re Strober*, 136 B.R. 614 (Bankr.E.D.N.Y.1992). However, this decision has now been effectively overruled by *In re Bellamy*, 22 BCD 1476, 962 F.2d 176 (2nd Cir. 1992).

However, the lien continues to encumber the residence to secure the bifurcated claim.

In this particular case, the lien not only of Associates, but also of the Wagners remains in effect. The Wagners' lien cannot be avoided at this point in time, and it shall remain a lien against the Debtors' residence. Interpreting *Dewsnup, Johnson* and *Hougland,* at the conclusion of the payments under the Chapter 13 Plan, the Debtors shall then receive a discharge. 11 U.S.C. § 1328, Subsections (a) or (b). The discharge will eliminate any *personal liability* that the Debtors may owe to their creditors. However, the liens of Associates and the Wagners will continue to exist. Any indebtedness then owing to Associates or the Wagners (after due credit for the payments made on the secured and unsecured portions of their claims during the course of the Chapter 13 proceedings) will become *in rem* claims or *in rem* liabilities secured by the Debtors' residence.

This so-called *in rem* analysis requires a Court, at the conclusion of the Chapter 13 proceedings, to note the payments actually made by the Debtor during the course of the Chapter 13 plan, both on the secured and unsecured claims, and then determine the amount that is still owing for the *in rem* liability. Subsequently, if the Debtors default in a payment on this *in rem* liability, Associates or the Wagners can proceed under state law to foreclose on their particular liens. However, if the residence of the Debtors has insufficient value to pay in full the liens of Associates and the Wagners at a foreclosure or other sale of the residence, the remaining liability is extinguished. Again, based upon the reasoning in *Dewsnup* and *Johnson,* the Debtors also have the possibility of filing yet another Chapter 13 petition to pay these remaining *in rem* liabilities. The reasoning of *Dewsnup* and *Johnson* create these *in rem* claims, which still exist at the conclusion of the Chapter 13 proceedings and are not discharged. Only the personal liability of a debtor is discharged. Essentially, creditors with recourse claims (the ability to pursue the debtor personally to the extent that the real property does not pay the creditor in full) are having their claims transformed into nonrecourse claims. It's an unusual result.

Some commentators [11] have noted that in the context of a Chapter 11 proceeding, the *Dewsnup* decision vitiates the Section 1111(b)(2) [12] election, and transforms all creditors with security into creditors with nonrecourse claims, irrespective of whether an election is made under Section 1111(b)(2).

Of course, the reasoning in *Dewsnup* or *Johnson* as to the discharge of the debtor's personal liability is of little comfort to Chapter 13 debtors in Arizona. If a debtor chooses to encumber his residence with a consensual mortgage or deed of trust, he/she need not worry about a deficiency judgment being obtained against him/her. Arizona has enacted anti-deficiency judgment statutes, which prohibit (*inter alia*) a creditor from obtaining an *in personam* judgment against the debtor, if the debtor's residence is sold and the proceeds are insufficient to pay the creditor in full.[13]

*The reasoning of Dewsnup and Johnson, however, is clear that a creditor with a lien on the debtor's principal residence should receive the benefit of an appreciation in value of the residence over a period of time.* To have a bankruptcy court artificially determine the value of the resi-

---

**11.** Margaret Howard, *Washington Scene—Dew—What?*, NORTON BANKR.LAW ADVISER, Mar. 1992, at 1.

**12.** 11 U.S.C. § 1111(a) provides that irrespective of the terms in the underlying documentation, *all* creditors initially have a recourse claim in bankruptcy. A creditor may elect to have the claim become nonrecourse. 11 U.S.C. § 1111(b)(2) then provides:
   (2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

**13.** *Ariz.Rev.Stats.Ann.* §§ 33–729(A), 33–730(A) and 33–814(G) (1991). The Arizona anti-deficiency judgment statutes have a broad application. See *Mid Kansas Fed.S. & L. v. Dynamic Dev.,* 167 Ariz. 122, 804 P.2d 1310 (1991), stating that a developer may take advantage of the provisions of the statutes.

dence at a Section 506 hearing or a confirmation hearing, and then avoid that portion of the lien which is deemed unsecured pursuant to Section 506(d) is inconsistent with a number of other Bankruptcy Code provisions, such as Sections 101(5), 102(2), 524(a)(1), 1322(b)(2), and 1328.

The Bankruptcy Appellate Panel ("BAP") has also addressed, in *dicta,* the bifurcation issue of secured and unsecured claims and the continuing vitality of liens in the context of a Chapter 13 proceeding. This Court initially did not consider the decision of *In re Lange,* 120 B.R. 132 (9th Cir. BAP 1990), in its April 14, 1992 decision on the record. However, the reasoning is instructive. The narrow issue to be determined was whether the Chapter 7 debtor could use 11 U.S.C. § 506(d) to avoid the undersecured portion of an indebtedness secured by a lien on real property.

The BAP relied on the Tenth Circuit decision of *Dewsnup v. Timm (In re Dewsnup),* 908 F.2d 588 (10th Cir.1990) in its analysis. The BAP stated:

> ... the Code and the legislative history strongly encourage repayment plans rather than liquidation. As the court in *Dewsnup* noted, Congress has provided numerous incentives to debtors choosing reorganization or rehabilitation under Chapters 11, 12 or 13 rather than liquidation under Chapter 7. Consequently, it is unlikely that Congress intended § 506 to be interpreted in a manner that permits a debtor to avoid consensual liens on his residence in Chapter 7 *that could not be removed in one of the rehabilitative Chapters.*
>
> To illustrate, in a Chapter 11 proceeding a creditor can make an election which would result in allowing its secured lien to remain on the property to the full extent of the original obligation. [Citations omitted.] ... *However, if an election is not made, the creditor still receives payments on the allowed amount*

*of the claim while the creditor retains his or her lien on the unsecured portion of the debt. In other words, whether or not an election is made, the holder's lien remains on the unsecured portion of the debt.* [Citations omitted.]

> Likewise, in a Chapter 13, § 1322(b)(2) prohibits the debtor from modifying the mortgage if it is on its principal residence and if the creditor holds no other security. *While the debt may be severed into secured and unsecured portions for treatment under the plan, the terms of the debt including payments may not be restructured. A debtor would have little motivation for a Chapter 13 remedy with its strictures and trustee supervision if § 506 alone could be used in a Chapter 7 to effect a strip down of the lien.* Accordingly, in our view, § 506 is not the stand alone avoidance provision *Gaglia* mandates that it become; rather, we believe that § 506 serves a very plain and important function, namely the implementation of a host of other provision of the Code. [Citations omitted.] [Emphasis added.]

*Id.* at 135–136.

The BAP refers to an "unsecured portion of the debt" still being secured by a lien. Thus, the BAP, in *dicta,* has focused on the continuing validity of liens in a Chapter 11 or a Chapter 13 proceeding, irrespective of the *claims* that a creditor may have in such proceedings. Moreover, the BAP does not conclude that the lien is somehow void, even though the lien may provide security for a secured and unsecured portion of an indebtedness.

The Court anticipates that the Debtors may argue that the lien should be extinguished to the extent that it secures an unsecured claim, which claim is subsequently paid according to the Chapter 13 plan. The difficulty with such a proposition is that the discharge provisions of 11 U.S.C. § 1328(a) or § 1328(b)[14] only vitiate

---

**14.** 11 U.S.C. § 1328(a) provides in pertinent part:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of

discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title * * *

the ability of a creditor to pursue an *in personam* judgment against the debtor. An *in rem* claim, which is bifurcated into a secured and unsecured claim during the course of a Chapter 13 proceeding, is not affected by Section 1328. Moreover, the reasoning of *Dewsnup* and *Johnson* adds further support for the proposition that the lien continues to exist as to the secured and unsecured claim at the consummation of the Chapter 13 plan. The lien is only extinguished when the entire indebtedness is paid in full or foreclosure proceedings under applicable State law extinguish the indebtedness.

In this case, at the conclusion of the Debtors' five-year plan, if all payments are made (or earlier if Section 1328(b) is applicable), the Debtors will receive a discharge. By consulting the various tables that financial institutions provide, the Debtors will compute the amount paid on the secured and unsecured claims of the creditors. The

remaining balance of the secured and unsecured claims of Associates and the Wagners will remain *in rem* liabilities, secured by the Debtors' residence, which must be paid if the Debtors' residence is subsequently sold as a result of foreclosure proceedings, or otherwise.

The benefit to the Debtors is that during the term of the Chapter 13 plan, the unsecured claim may be treated in a different manner than the secured claim.[15] The Debtors may propose a minimal repayment to all unsecured creditors, including the creditor with a bifurcated claim. Thus, the Debtors may pay less to the creditor over the term of the Chapter 13 plan than the Debtors would have paid if the creditor had a fully secured claim, with interest accruing on the full amount of the secured claim.

This Court does note that the recent Second Circuit decision of *In re Bellamy*, 22 BCD 1476, 962 F.2d 176 (2nd Cir.1992) seems to state, in *dicta*, that the lien secur-

---

and

11 U.S.C. § 1328(b) provides:

(b) At any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if—

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

**15.** In Arizona, a debtor previously paid interest on the prepetition arrearages due and owing to a secured creditor that was paid in a Chapter 13 plan of reorganization. The recent Ninth Circuit decision of *In re Laguna*, 944 F.2d 542 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992), now prohibits the payment of interest on such a prepetition arrearage. However, in this case, the Debtors may not alter the interest rate or the amount of the monthly mortgage payment as to the *secured* claim. Therefore, the effective principal balance of the loan has been reduced to the amount of $77,000 (the value of the residence), rather than the principal balance of $79,202.79 (the aggregate amount due and owing to Associates). By not making any payments, or *de mini-*

*mus* payments, on the Associates' unsecured claim, and recomputing the payments made by the Debtor on the reduced principal balance of the secured claim, the Debtors may have a cost savings to them over the life of the 5–year plan.

An interesting point is that if the courts reduce the effective principal balance of the loan, but do not and cannot modify the monthly mortgage payments (which include principal and interest payments), a debtor necessarily repays the loan on an accelerated basis. Effectively the debtor is making an excess payment of principal on a monthly basis, because of the reduced principal balance determined by the bankruptcy court as to the secured claim. This excess or additional payment by the debtor must necessarily be applied in reduction of the loan's reduced principal balance, since no other terms and conditions of the loan may be modified. *In re Hayes*, 111 B.R. 924, 927 (Bankr. D.Or.1990).

In the context of a *Chapter 11 proceeding*, and in light of the *Dewsnup* decision, the benefit to the debtor would be a reduced principal balance if the claim were bifurcated. The debtor could then alter the repayment terms of the secured, as well as the unsecured, claim. If a Section 1111(b)(2) election were made, the creditor would then arguably (pursuant to *Dewsnup* ) have a secured claim to the full extent of the indebtedness and could demand that interest be computed on the full amount of the claim, irrespective of the value of the collateral. Such an analysis is necessary in a Chapter 11 proceeding. Otherwise, there would be no difference between an electing and a nonelecting creditor.

ing an unsecured portion of a bifurcated claim may be avoided once a debtor has made all plan payments on the bifurcated claim. The *Bellamy* decision was rendered after this Court's April 14 decision on the record, and a brief discussion of *Bellamy* is warranted. The *Bellamy* Court considers the *Dewsnup* decision in its analysis, and concludes that *Dewsnup* does not prohibit the bifurcation of a claim, if the creditor is secured only by the debtor's principal residence.

The Second Circuit then notes that the bifurcation of the claim is not a modification of the secured creditor's rights under Section 1322(b)(2). Because the secured creditor's claim is not being modified, the Court further concludes that the creditor need not be paid off in full within five years as mandated by Sections 1322(c) and 1325(a)(5)(B). See Section 1322(b)(5); *Id.* at 1481, 962 F.2d 176. The Court then adds the following language:

> Section 1322(b)(5) addresses, as does the Code in general, secured and unsecured claims. In light of the goals of Chapter 13, §§ 1322(b)(2) and (5) must be read as allowing a debtor to reinstate in its stripped down form a residential mortgage that comes due beyond the life of the plan. The debtor must cure arrearages within a reasonable time, see § 1322(b)(5), but need make scheduled mortgage payments only until the *secured claim* is fully paid. See *In re Franklin*, 126 B.R. at 712–13; *In re Hayes*, 111 B.R. [924] at 927. Such treatment of a residential mortgage lender's secured claim is neither a modification prohibited by § 1322(b)(2) nor does it implicate §§ 1325(a)(5)(B) or 1322(c). [Emphasis added.]

*Id.* This language seems to imply that the debtor may reinstate the mortgage "in a stripped down form", or a reduced principal balance equal to the value of the residence at the time of the Section 506 or confirmation hearing, pay the arrearages pursuant to a plan of reorganization, and make regular monthly payments until the *reduced principal balance* or the *secured claim* is paid in full. However, this analysis effectively avoids the lien of the secured credi-

tor pursuant to Section 506(d) without directly so stating. This result may not have been intended. However, to the extent that the Second Circuit did intend to avoid the lien as to the unsecured portion of the claim, said analysis is inconsistent with the *in rem* analysis in *Johnson* and *Dewsnup*. Indeed this Court has independently reviewed *In re Franklin*, 126 B.R. 702 (Bankr.N.D.Miss.1991), upon which the *Bellamy* Court relied. *Franklin* was decided prior to the *Dewsnup* decision. Moreover, it specifically bifurcates the undersecured creditor's claim and further orders that the interested parties proceed with a Section 506(d) adversary proceeding to avoid the lien of the creditor to the extent that the lien provides security for the unsecured portion of the claim. The Bankruptcy Appellate Panel, in the *Lange* decision, disagrees with the *Franklin* Court's analysis as to the continuing validity of the lien as to the unsecured portion of the bifurcated claim. This Court believes the *Lange* analysis is more appropriate in light of *Johnson* and *Dewsnup*.

Moreover, this Court notes that the Court in *Bellamy* relied on Section 1322(b)(5) in its analysis. Section 1322(b)(5) provides as follows:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

This Section specifically permits a Chapter 13 plan of reorganization to cure the arrearages on, and pay, unsecured claims, even though the final payment on the unsecured claim is due and payable *after* the final payment has been made by a debtor pursuant to a confirmed Chapter 13 plan. Although originally intended to focus on the repayment of student loans, this Section provides further authority for the proposition that a lien encumbering the debtor's principal residence may provide se-

curity for an unsecured claim during the period when the debtor is making payments pursuant to a confirmed Chapter 13 plan.

Therefore, there is no specific statutory provision which supports the *Bellamy* Court's conclusion that once the payments are made on the secured claim pursuant to a confirmed Chapter 13 plan, the lien must be extinguished as to the secured and unsecured portion of a bifurcated claim.

This Court reaffirms its analysis as set forth hereinabove as to what will transpire at the conclusion of the Debtors' five-year plan. Such a result is mandated by *Johnson* and *Dewsnup*.

IT IS SO ORDERED.